UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-cr-234 (WMW)

UNITED STATES OF AMERICA,

        Plaintiff,

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING POSITION PAPER**

v.

BRANDON MARK BJERKNES,

        Defendant.

The United States of America, by and through its attorneys, Gregory G. Brooker, United States Attorney for the District of Minnesota, and Angela M. Munoz-Kaphing, Assistant United States Attorney, hereby responds to Defendant Brandon Bjerknes' sentencing position paper (Dkt. No. 42).

**I.  A Variance From An Advisory Guideline Sentence Of Life Imprisonment Down To 15 years' Imprisonment Is Wholly Unsupported By The 18 U.S.C. § 3553(a) Factors.**

The Defendant's request for a variance to 15 years' (180 months') imprisonment is largely based on arguments that: (1) he accepted responsibility and therefore should benefit at the time of sentencing; (2) his family will deter him from reoffending; and (3) he is now in counseling and working through his mental illness. (Dkt. No. 42). The Government respectfully, and strenuously, disagrees that these considerations justify a 15-year sentence for this particular Defendant.

1

### A. The Defendant's guilty plea warrants a 360-month sentence, not 180 months.

Acceptance of responsibility – that is, taking full and complete admission of one's conduct – is an important consideration when calculating the appropriate sentence. Here, the Defendant entered a guilty plea to a 2-count Information charging coercion and enticement and production of child pornography. The Government agrees that a guilty plea spared the 55 minor victims the stress of a trial. The Government strongly disagrees with the Defendant's other characterizations in his sentencing paper documenting his view of his acceptance of responsibility, as they are inconsistent with the underlying factual record.

The Defendant argues that a 15-year sentence is appropriate because he immediately accepted responsibility and "confessed his wrongs" to law enforcement. (Dkt. No. 42 at 3-4). When first contacted by law enforcement, the Defendant lied in response to questions relating to the underlying offenses and attempted to deceive law enforcement. The Defendant denied using Facebook, other than occasionally viewing his wife's account. When further interviewed, the Defendant attempted to place the blame on unidentified students from Bemidji Middle School as being responsible for using his phone and downloading improper content. The Defendant eventually admitted that he regularly exchanged nude and sexually explicit photographs and text messages with a teacher that he worked with at Bemidji Middle School, and with an 18-year old woman who babysits his children. Only after law enforcement specifically asked the Defendant about Minor #1, did he admit to chatting with her on social media.

The Defendant never accurately reported the extent of his predatory internet activities to law enforcement and came nowhere near to disclosing that he victimized 55 minors, including identifying the minors that he personally knew due to his role in the Bemidji public schools. The Beltrami County Sheriff's Office seized his electronic devices pursuant to a search warrant, and only then learned the extent of the Defendant's predatory behavior, including the self-produced videos the Defendant created to preserve sexually-explicit Snapchat messages. At every turn in the investigation, the Defendant minimized his conduct and his exploitation of the minor victims. To now argue that the Defendant has been open, honest, and forthcoming such that the 180-month mandatory minimum is appropriate, ignores the underlying factual record and the Defendant's own behavior.

### B. The existence of Defendant's family does not justify a 180-month sentence.

The Defendant promises a commitment to his family and a desire to avoid subjecting his family to future "public humiliation" as a basis for his argument that a 15-year sentence is appropriate. (Dkt. No. 42 at 2.) If the Defendant could truly be motivated by a commitment to family, then the existence of his family should have driven him to lead a law-abiding life in the first place. A sincere commitment to his wife, young children, and extended family should have been a basis to curb his perverse sexual desires. Sadly, the wife and children that Defendant uses to ask this Court for a lower sentence are the same individuals that he ignored during his hundreds of hours of "Brett Larson" social media time. The Defendant deceived his family while committing these offenses and it is clear from the Defendant's actions that family commitments provide zero deterrence for the Defendant.

### C. The Defendant's self-reported therapy sessions do not justify a 180-month sentence.

The Defendant self-reports that he has attended counseling sessions and is working to understand why he committed his criminal offenses, and appears to argue that the progress made in therapy justifies a downward variance to 180 months of imprisonment. The information before the Court regarding the Defendant's therapy sessions is based solely on the Defendant's own recounting and Dr. John Cronin's January 2, 2018 Psychosexual Evaluation. The Defendant's account of events should be taken for what it is: self-serving statements intended to minimize his conduct and limit his sentencing exposure.

The Psychosexual Evaluation proffered by the Defendant provides no basis for the significant variance requested by the Defendant due to the inherent limitations of Dr. Cronin's analysis. Dr. Cronin's entire analysis is based on the Defendant's own self-reporting. There is no indication that Dr. Cronin listened to the audio recordings of law enforcement's interviews of the Defendant. There is no indication that Dr. Cronin reviewed any of the Defendant's written chats with the minor victims, including the Defendant's "Brett Larson" Facebook messages, which span over 15,000 pages. If Dr. Cronin had reviewed any portion of these messages or listened to the Defendant's recorded statements, one would assume that Dr. Cronin would have questioned the Defendant "den[ying] that he has ever forced or pressured any female sexually" and the Defendant "den[ying] any sexual interest in children." Dr. Cronin did not utilize a polygraph to test the veracity of the Defendant's self-serving reports, and only interviewed two friends of the Defendant and the Defendant's wife, all of whom admittedly had no knowledge of the Defendant's crimes.

4

Dr. Cronin's "assignment" for the Defendant "to come up with a prevention program for parents of what kinds of things they need to do, and be aware of, in guarding their young kids from people like him" is offensive.  This "assignment" presumes that the parents and guardians of the victims of the Defendant's crimes were somehow at fault and could have stopped the Defendant from preying on their children.  The only person at fault for the Defendant's crimes is the Defendant.  If Dr. Cronin had reviewed the investigative materials in this case, he would have known that the Defendant's crimes were finally stopped because a vigilant parent reported the Defendant's disturbing social media messages to law enforcement.  Dr. Cronin's views of the world are out of touch, outdated, and should not be a basis for a lower sentence.  *See* Exhibit 1, Lisa Damour, *Teenagers, Stop Asking For Nude Photos*, N.Y. Times, Jan. 2, 2018 ("Shifting the norms about soliciting images could helpfully shift the balance of power.  If parents and schools have made clear that the requests [for nude photos] are a violation, girls would feel that they had the option of taking screen shots of them and seeking help from adults.").

> **II.    A sentence of 360 months' imprisonment is appropriate and will not create unwarranted sentencing disparities.**

The criminal sentences cited by the Defendant in his sentencing paper are not from comparable cases, and do not provide a valid basis for departing to the 15-year mandatory minimum.  Here, the Defendant created fake social media profiles to contact at least 55 known minor victims over the course of multiple years.  The Defendant used, persuaded, enticed, and coerced 6 known minor victims to produce child pornography.  The Defendant used his "personal" iPhone and "work" iPhone issued to him due to his role as Assistant

Principal of the Bemidji Middle School to create a permanent record of sexually-explicit Snapchat messages from 3 known minor victims. All of these offenses were committed while he was serving as an Assistant Principal and entrusted with the private and confidential information of his students.

The most recent case in the District of Minnesota involving a similar fact pattern is *United States v. Anton Alexander Martynenko*, Criminal No. 16-cr-0013 (RHK). Defendant Martynenko also created alias social media profiles to obtain child pornography from his victims. There, the Court sentenced Defendant Martynenko to a total of 456 months. The Government acknowledges that there are distinguishing factors between Defendant Martynenko and Defendant Bjerknes, including the overall number of victims and the sexual contact that Defendant Martynenko had with some of his victims. Defendant Bjerknes' victims, however, were largely younger, many were known to him, and he selected his victims based on information he learned as Assistant Principal.

The Defendant goes to great lengths to point out that he is "not a recidivist offender." The number of victims, the scope of the Defendant's offenses, the Defendant's savviness to conceal his identity, and the length of time that the offenses went on for negates any credit that the Defendant claims based on his criminal history. The Defendant is a repeat and dangerous predator who is sexually attracted to children. The Defendant acted out on his attraction for multiple years and his offenses warrant a 360-month sentence.

### III.    Conclusion

A fair sentence for the Defendant takes into account all of his criminal activity, the impact on his many minor victims and their families, the need to protect the public from

6

future crimes of the Defendant, and deters the Defendant and any others from future similar crimes. A fair and just sentence is 360 months' of imprisonment, followed by a lifetime of supervised release.


Dated: January 30, 2018					Respectfully Submitted,

							GREGORY G. BROOKER
							United States Attorney

							*/s/ Angela M. Munoz-Kaphing*

							BY:  ANGELA M. MUNOZ-KAPHING
							Assistant United States Attorney