1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
2
      ------------------------------------------------------------
3                                   )
      United States of America,     )   File No. 17-CR-234
4                                   )            (WMW)
              Plaintiff,            )
5                                   )
      vs.                           )   St. Paul, Minnesota
6                                   )   September 28, 2017
      Brandon Mark Bjerknes,        )   8:09 a.m.
7                                   )
              Defendant.            )
8     ------------------------------------------------------------
9
              BEFORE THE HONORABLE WILHELMINA M. WRIGHT
10               UNITED STATES DISTRICT COURT JUDGE

11                   **(CHANGE OF PLEA HEARING)**

12
      APPEARANCES
13     For the Plaintiff:        U.S. Attorney's Office
                                 ANGELA M. MUNOZ-KAPHING, AUSA
14                               600 U.S. Courthouse
                                 300 South Fourth Street
15                               Minneapolis, Minnesota 55415

16     For the Defendant:        Wold Morrison Law
                                 PETER B. WOLD, ESQ.
17                               247 Third Avenue South
                                 Minneapolis, Minnesota 55415
18
      Court Reporter:           LORI A. SIMPSON, RMR-CRR
19                              Suite 146
                                316 North Robert Street
20                              St. Paul, Minnesota 55101

21

22

23

24
          Proceedings recorded by mechanical stenography;
25    transcript produced by computer.

1       **P R O C E E D I N G S**

2         **IN OPEN COURT**

3       (Defendant present)

4       COURTROOM DEPUTY:  The matter before the Court

5    today is 17-CR-234, United States of America vs. Brandon

6    Mark Bjerknes.

7       Counsel, will you approach the podium and identify

8    yourselves for the record, please.

9       MS. MUNOZ-KAPHING:  Good morning, Your Honor.

10   Angela Munoz-Kaphing on behalf of the United States.  With

11   me at counsel table is Sergeant Jarrett Walton from the

12   Beltrami County Sheriff's Office.

13      THE COURT:  Thank you.  Good morning,

14   Ms. Munoz-Kaphing.

15      MR. WOLD:  And good morning, Your Honor.  Peter

16   Wold appearing with Mr. Bjerknes, who is present.

17      THE COURT:  Good morning, Mr. Wold.  Good morning,

18   Mr. Bjerknes.

19      THE DEFENDANT:  Good morning.

20      THE COURT:  I'll ask counsel as well as

21   Mr. Bjerknes to come forward.  And we are here today for an

22   initial appearance, an arraignment, and a guilty plea; is

23   that correct?

24      MR. WOLD:  That's correct, Your Honor.

25      THE COURT:  So to begin with, Mr. Bjerknes, if

1    there is anything that I say today that you do not hear or

2    understand, please tell me so that I can clarify it for you.

3    Do not answer any question that confuses you or that you

4    don't hear clearly, and do not tell me that you understand

5    something unless you understand it.  Okay?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Because this is your first appearance

8    in court in connection with the charges, I have to advise

9    you of your constitutional rights and other matters at the

10   outset.

11             You've been charged with the crimes of coercion

12   and enticement and production of child pornography, which

13   are felony offenses.

14             You have the right to be represented by an

15   attorney during these proceedings.  You have the right to be

16   represented by an attorney whom you hire; or if you could

17   not afford to hire an attorney, you have the right to have

18   an attorney appointed to represent you without any charge to

19   you.

20             You also have the right to remain silent.  You do

21   not have to answer any of my questions.  If you begin to

22   answer one of my questions, you can stop at any time and

23   decide not to say anything more.  Any statement that you

24   make today may be used against you, so you need to

25   understand that.

 1                    Sir, are you a United States citizen?

 2               THE DEFENDANT:  Yes, Your Honor.

 3               THE COURT:  Okay.  Mr. Bjerknes, have you received

 4     a copy of the Information, which is the written charges that

 5     the government has made against you?

 6               THE DEFENDANT:  Yes, Your Honor.

 7               THE COURT:  And have you read that Information?

 8               THE DEFENDANT:  Yes, Your Honor.

 9               THE COURT:  And has Mr. Wold explained the charges

10     alleged against you in the Information?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Has Mr. Wold answered all of your

13     questions about those charges?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  Now, the Information charges you with

16     federal felony offenses.  Do you understand that you cannot

17     be charged with these offenses without an indictment by a

18     grand jury unless you agree to the charges being filed

19     through an information; do you understand that?

20               THE DEFENDANT:  Yes, Your Honor.

21               THE COURT:  And do you give up your right to be

22     indicted by a grand jury?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  Okay.  Do we have a form that shows

25     that waiver?

1          MS. MUNOZ-KAPHING:  We do, Your Honor.  May I

2     tender it to the Court now?

3          THE COURT:  Yes, please.

4       (Document handed to the Court)

5          THE COURT:  And, Mr. Bjerknes, is this your

6     signature on this document that was just given to me?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And that being a waiver of the

9     prosecution by indictment?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  I accept that and we will file

12     that.

13          Mr. Wold, does Mr. Bjerknes waive the right to

14     have the Information read?

15          MR. WOLD:  He does.

16          THE COURT:  Okay.  Mr. Bjerknes, I understand that

17     you are here today because you've decided to enter a guilty

18     plea in this case; is that correct?

19          THE DEFENDANT:  That is correct, Your Honor.

20          THE COURT:  And before I accept your guilty plea,

21     I have to ask you several questions and you have to answer

22     those questions under oath.  So at this time Ms. Bender, my

23     courtroom deputy, will swear you in.

24          COURTROOM DEPUTY:  Will you raise your right hand,

25     please.

1        (Defendant sworn)

2                        **EXAMINATION**

3     BY THE COURT:

4     Q.  Now, Mr. Bjerknes, do you understand that you are now

5     under oath?

6     A.  Yes, Your Honor.

7     Q.  And because you are now under oath, if you say anything

8     at this hearing that is not true, you could be prosecuted

9     for a separate crime.  That crime is perjury, and the

10    government could use any false statements that you give

11    under oath against you in that prosecution.  So it is very

12    important for you to be truthful in everything that you say

13    today.  Do you understand that?

14    A.  Yes, Your Honor.

15    Q.  The most important thing for you to understand is that

16    if you plead guilty and if I accept your guilty plea, you

17    will not be able to change your mind or take back your

18    guilty plea.

19             So if there is anything that happens that confuses

20    you or that worries you, you should get the help from

21    Mr. Wold that you need before you plead guilty, because

22    after you plead guilty it may be too late for you to get the

23    help that you need.  Do you understand that, Mr. Bjerknes?

24    A.  Yes, Your Honor.

25    Q.  If you wish to talk to Mr. Wold at any time today,

1    you're welcome to do so.  If I ask you a question and you're

2    not certain whether to answer it or how to answer it, just

3    let me know that you want to speak with your attorney and I

4    will give you the chance to speak with Mr. Wold privately

5    either here in the courtroom or outside of the courtroom.  I

6    don't mind waiting.  Do you understand?

7    A.  Yes, Your Honor.

8    Q.  Mr. Bjerknes, I will begin by asking a few questions to

9    make certain that you are competent to enter a guilty plea.

10          So please state your full name.

11   A.  Brandon Mark Bjerknes.

12   Q.  Have you ever used any other name, Mr. Bjerknes?

13   A.  No, Your Honor.

14   Q.  How old are you, sir?

15   A.  35.

16   Q.  And how far did you go in school?

17   A.  Through college, a master's degree and a specialist

18   degree.

19   Q.  And where did you go to college and graduate school?

20   A.  I went to Bemidji State University and Moorhead State

21   University.

22   Q.  And do you have any trouble speaking or understanding

23   the English language?

24   A.  No, Your Honor.

25   Q.  And based on what you have told me about your

1    educational attainment, I assume that you read well, you are

2    able to read.  Is that a correct assumption?

3    A.  Yes, Your Honor.

4    Q.  Okay.  And right now are you under the influence of any

5    alcohol?

6    A.  No, Your Honor.

7    Q.  Have you had any alcohol in the last 24 hours?

8    A.  No, Your Honor.

9            MR. WOLD:  If I could have a minute, Your Honor?

10           THE COURT:  Yes, you may.

11      (Defendant and defense counsel confer)

12           THE DEFENDANT:  Back to one of your questions

13   about using a different name, I did use the name Brett

14   Larson.

15   BY THE COURT:

16   Q.  Brett Larson?

17   A.  Correct.

18   Q.  And how do you spell that?

19   A.  B-r-e-t-t, L-a-r-s-o-n.

20   Q.  Okay.  Thank you.  I have a few questions about drug use

21   now and when I say, "drug," I mean any drug.  So that would

22   be prescription medication, over-the-counter medication that

23   you might take, as well as any other type of drug use.

24           Are you under the influence of any drug or

25   medication at this time?

1     A.  I take a medication for blood pressure.

2     Q.  And did you take it today?

3     A.  Last night.

4     Q.  And what type of medication is that?

5     A.  Lisinopril.

6     Q.  Okay.  And will that affect your ability to understand

7     what you are doing here today?

8     A.  No, Your Honor.

9     Q.  Are you generally in good health?

10    A.  Yes, Your Honor.

11    Q.  And are you able to think clearly today?

12    A.  Yes, Your Honor.

13    Q.  Now, you are represented here by Mr. Wold.  Have you

14    fully discussed the charges against you with Mr. Wold?

15    A.  Yes, Your Honor.

16    Q.  And have you told Mr. Wold everything you want him to

17    know about this case?

18    A.  Yes, Your Honor.

19    Q.  Are you fully satisfied with Mr. Wold's services that

20    you've received?

21    A.  Yes, Your Honor.

22            THE COURT:  Mr. Wold, have you had sufficient time

23    to investigate the law and the facts of Mr. Bjerknes's case

24    and to discuss it with Mr. Bjerknes?

25            MR. WOLD:  I have.

1       THE COURT:  And based on those discussions, are

2    you satisfied that Mr. Bjerknes understands the charges

3    against him and the range of punishments that he faces?

4       MR. WOLD:  He does.

5       THE COURT:  Based on those dealings with

6    Mr. Bjerknes, are you satisfied that he's competent to make

7    a decision about whether to plead guilty today, Mr. Wold?

8       MR. WOLD:  I am satisfied, Your Honor.

9    BY THE COURT:

10   Q.  So, Mr. Bjerknes, you have told me that you wish to

11   enter a guilty plea today.  If you enter a guilty plea, you

12   will be giving up a number of important rights.  The law

13   requires me to review these rights with you before you make

14   a final decision about whether to plead guilty.

15       First, you have the right to plead not guilty to

16   the charges against you.  Do you understand that?

17   A.  Yes, Your Honor.

18   Q.  You have the right to be tried by a jury that is made up

19   of 12 citizens of this district.  Do you understand?

20   A.  Yes, Your Honor.

21   Q.  You also have the right to a speedy trial and that means

22   that if you wanted to take your case to trial, you would get

23   a trial in the next few months.  You would not have to wait

24   any longer than that.  Do you have any questions about that?

25   A.  No, Your Honor.

1    Q.  You have the right to be represented by an attorney at

2    every stage of the proceedings.  That would be before trial,

3    during trial, and after trial if you chose to go to trial.

4    Do you understand that?

5    A.  Yes, Your Honor.

6    Q.  It is your right to be represented by an attorney who

7    you hire, but if you cannot afford to hire an attorney, you

8    have the right to be represented by an attorney who is

9    appointed to represent you at no cost to you.  Do you

10   understand?

11   A.  Yes, Your Honor.

12   Q.  And at trial, if you went to trial, you would be

13   presumed to be innocent and I would instruct the jurors that

14   they must presume that you are innocent.  Do you understand

15   that?

16   A.  Yes, Your Honor.

17   Q.  And the burden would be on the government to prove your

18   guilt, not on you to prove your innocence if you went to

19   trial.  You understand?

20   A.  Yes, Your Honor.

21   Q.  You would have the right to -- you would not have to

22   prove anything if you went to trial.  Do you understand?

23   A.  Yes, Your Honor.

24   Q.  Not only would the burden be on the government to prove

25   your guilt, but the government would have to prove your

1    guilt beyond a reasonable doubt.  Understood?

2    A.  Yes, Your Honor.

3    Q.  I would instruct the jurors, if you went to trial, that

4    unless they were convinced of your guilt beyond a reasonable

5    doubt, they would have to find you not guilty.  Understood?

6    A.  Yes, Your Honor.

7    Q.  And if you did go to trial, the government would seek to

8    prove your guilt by calling witnesses, who would come here

9    into this courtroom and testify against you.  You would have

10   the right to confront those witnesses.  That means that you

11   would have the right to be physically present in the

12   courtroom whenever anyone testified at your trial so that

13   you could see and hear that testimony for yourself.  It also

14   means that Mr. Wold would have the right to ask questions of

15   anyone who testified at your trial to try to show the

16   weaknesses in their testimony.  Do you understand?

17   A.  Yes, Your Honor.

18   Q.  You also would have the right to remain silent at your

19   trial.  So no one could force you to testify.  That would be

20   entirely your decision to make, whether or not to testify at

21   your trial, if you went to trial.  Do you understand?

22   A.  Yes, Your Honor.

23   Q.  And if you decided not to testify, your silence could

24   not be used against you and, in fact, if you wanted me to, I

25   would instruct the jurors that when they were deciding

1   whether you had been proven guilty beyond a reasonable

2   doubt, they could not consider the fact that you chose not

3   to testify if that was your choice.  Do you understand?

4   A.  Yes, Your Honor.

5   Q.  Now, although you would not have to testify at your

6   trial or call any witnesses or present any evidence, you

7   would have the right to do all of those things if you

8   wished.  Do you understand?

9   A.  Yes, Your Honor.

10  Q.  You'd have the right to take the stand and testify

11  before the jury on your own behalf and to tell the jurors

12  your side of the story.  Understood?

13  A.  Yes, Your Honor.

14  Q.  You'd also have the right to call others to testify on

15  your behalf and, in fact, you could subpoena witnesses.  In

16  other words, you could get a court order from me that would

17  force people or require people to testify at your trial,

18  whether they wanted to or not.  Do you understand?

19  A.  Yes, Your Honor.

20  Q.  If you did testify or call witnesses or present any

21  evidence at your trial, that would not change the burden of

22  proof.  The government would still have the burden of

23  proving your guilt beyond a reasonable doubt.  Understood?

24  A.  Yes, Your Honor.

25  Q.  And if you went to trial, you could not be convicted of

1    any charge unless every single member of the jury found that

2    you had been proven guilty of that charge beyond a

3    reasonable doubt.  In other words, any guilty verdict would

4    have to be unanimous, all 12 jurors would have to agree.

5    Understood?

6    A.  Yes, Your Honor.

7    Q.  Now, finally, if you plead guilty and I accept your

8    guilty plea, you will stand convicted of the charge that you

9    plead guilty to and you will give up your right to -- or you

10   will give up the trial.  You won't have one on that charge.

11        You will give up other rights that I have just

12   described and you will give up your right to file any

13   motions before trial, such as motions asking me to rule that

14   certain evidence can't be used against you.

15        Do you understand that if you plead guilty and I

16   accept your guilty plea, you'll be giving up all of those

17   rights?

18   A.  Yes, Your Honor.

19   Q.  So let's review the nature of the charges that you will

20   plead guilty to.  Mr. Bjerknes, I understand that you are

21   here to plead guilty to Counts 1 and 2 of the Information.

22        Count 1 of the Information charges you with

23   coercion and enticement of a minor to engage in sexual

24   activity and that's a violation of Title 18, United States

25   Code, Section 2422(b) and 2427.

1           For you to be convicted of this charge, the

2     government would have to prove beyond a reasonable doubt

3     three elements:  First, that you knowingly used a facility

4     and means of interstate and foreign commerce, namely, the

5     Internet, to persuade, induce, entice, or coerce an

6     individual under the age of 18 years to engage in sexual

7     activity and that sexual activity is the production of child

8     pornography; second, that you believed that such individual

9     was less than 18 years of age; and three, that based upon

10    the sexual activity that occurred, you could have been

11    charged with a criminal offense under the laws of the United

12    States, namely, the production of child pornography, the

13    elements of which I just described -- or I will describe to

14    you in a moment.

15          Do you understand that?

16    A.  Yes, Your Honor.

17    Q.  Count 2 of the Information charges you with production

18    of child pornography, in violation of Title 18, United

19    States Code, Sections 2251(a) and 2251(e).

20          Now, for you to be convicted of this charge, the

21    government would have to prove beyond a reasonable doubt

22    four elements:  First, at the time alleged the individual

23    described as Minor Number 2 in the Information was under the

24    age of 18 years; second, you knowingly employed, used,

25    persuaded, induced, or enticed the individual who is

1    described as Minor Number 2 in the Information to engage in

2    sexually explicit conduct; three, that you acted with the

3    purpose of producing a visual depiction of such conduct; and

4    four, you knew or had reason to know that such visual

5    depiction would be transported across state lines or into

6    foreign commerce or such visual depiction was actually

7    transported or transmitted using any means or facility of

8    interstate or foreign commerce.

9           Do you understand that these are the charges

10   against you?

11   A.  Yes, Your Honor.

12   Q.  I'll now review with you the penalties that you'll be

13   facing if you plead guilty to Counts 1 and 2 of the

14   Information.

15          The first is imprisonment.  As to Count 1, there's

16   a mandatory minimum of 10 years and a maximum of life.  As

17   to Count 2, there's a mandatory minimum of 15 years and a

18   maximum of 30 years.

19          The second form of penalty is supervised release.

20   As to Count 1, a mandatory minimum of five years and a

21   maximum of life.  As to Count 2, a mandatory minimum of five

22   years and a maximum of life.

23          There's a fine as to each count of up to $250,000

24   and a mandatory special assessment of $100 per count that's

25   due at the time of your sentencing.

1          Now, under the Mandatory Victim Restitution Act,

2     I'm required to order that you pay restitution to the

3     victims of your crime.  I could order you to forfeit the

4     property that is described in the forfeiture section of the

5     Information and in paragraph 10 of the plea agreement.  And,

6     finally, I could order you to pay the costs of prosecuting

7     you.

8          Now, do you understand that these are the

9     penalties that might be imposed on you if you plead guilty

10    to Counts 1 and 2 of the Information?

11    A.  Yes, Your Honor.

12    Q.  Now, I mentioned supervised release as a penalty and

13    I'll explain that now.

14          Supervised release is what happens after a

15    convicted person is released from prison.  Let's say that

16    you go to prison, you serve your time, you get out of

17    prison, then you're placed on supervised release.  I will

18    decide how long you'll serve on supervised release and I

19    will also decide what conditions you must follow while you

20    are on supervised release.

21          Now, if you violate any conditions of your

22    supervised release, you could be sent back to prison and

23    kept in prison for up to the length of your term of

24    supervised release without getting any credit for the time

25    that you have already served on supervised release.  Do you

1    understand that?

2    A.  Yes, Your Honor.

3    Q.  And I also need to warn you that there is no parole in

4    the federal prison system.  So if you are sentenced to

5    prison, you will have to serve your full sentence.  You will

6    not be released early on parole.  Do you understand that?

7    A.  Yes, Your Honor.

8    Q.  And, also, because you are a United States citizen and

9    you have been charged with a felony, if you plead guilty you

10   may lose your rights to vote, to hold public office, to

11   serve on a jury, and to possess certain types of weapons,

12   including a firearm and ammunition.  Do you understand that?

13   A.  Yes, I do, Your Honor.

14   Q.  Also, because you've been charged with a sex offense, if

15   you plead guilty you will be required to register as a sex

16   offender and keep your registration current in this state

17   and in any other state in which you live, work, or are a

18   student.  If you knowingly fail to register or to upgrade

19   your registration as a sex offender, that is a federal

20   crime.  Do you understand that?

21   A.  Yes, Your Honor.

22   Q.  Now, I understand, Mr. Bjerknes, you have entered into a

23   plea agreement with the United States; is that correct?

24   A.  That is correct, Your Honor.

25   Q.  Have you read the plea agreement?

1    A.  Yes, Your Honor.

2    Q.  Has Mr. Wold carefully gone through the plea agreement

3    with you and explained all of its terms?

4    A.  Yes, Your Honor.

5    Q.  Has Mr. Wold answered all of your questions about the

6    plea agreement?

7    A.  Yes, Your Honor.

8    Q.  Do you believe that you understand the terms of the plea

9    agreement?

10   A.  I do, Your Honor.

11   Q.  Now, before you can plead guilty, I have to determine

12   whether there is a factual basis for your guilty plea.  That

13   means I have to make sure that you actually committed the

14   crime that you are pleading guilty to.

15          So to avoid any misunderstandings, I'll ask

16   Ms. Munoz-Kaphing to describe the factual basis, the

17   guidelines calculations, and any other important provisions

18   in the plea agreement that I haven't already covered.

19          MS. MUNOZ-KAPHING:  Thank you, Your Honor.

20                          **EXAMINATION**

21   BY MS. MUNOZ-KAPHING:

22   Q.  Mr. Bjerknes, this is the version of the plea agreement

23   that we've all signed at the outset of the hearing.  Do you

24   see your signature at the back page here?

25   A.  I do.

1    Q.  And Mr. Wold's signature and my own signature?

2    A.  Um-hmm.

3    Q.  So I am going to walk through, as Judge Wright has

4    asked, portions of this plea agreement.

5              MS. MUNOZ-KAPHING:  Your Honor, would you like me

6    to start with the factual basis?

7              THE COURT:  Yes, please.

8    BY MS. MUNOZ-KAPHING:

9    Q.  So, Mr. Bjerknes, I am going to begin with page 1 here.

10   And so you have agreed that the following facts -- you agree

11   to the following facts and you further agree that if this

12   matter were to go to trial, the United States, meaning me

13   and the government, would be able to prove the following

14   facts beyond a reasonable doubt.  We're going to start here

15   with the background and the scheme that's underlying the

16   charges today.

17             So from at least as early as 2014 and continuing

18   through on or about March 20th of 2017, in the state and

19   district of Minnesota, you agree that you engaged in a

20   scheme using various social media applications, including

21   Facebook and Snapchat, to do a number of things; is that

22   correct?

23   A.  Yes.

24   Q.  And some of those items are you solicited images and

25   videos constituting child pornography from minor females,

1    you engaged in sexually explicit conversations with minor

2    females, and distributed sexually explicit images and videos

3    to minor females and males.  Do you agree?

4    A.  Yes.

5             THE COURT:  Would you keep your voice up or maybe

6    move the microphone so I can make sure that I hear you.

7    BY MS. MUNOZ-KAPHING:

8    Q.  Next part of your scheme.  You agree that you posed as a

9    13- to 15-year-old male by the name of Brett Larson; is that

10   correct?

11   A.  Yes.

12   Q.  And that you created Brett Larson -- a Brett Larson

13   Facebook page and two Snapchat accounts under the names of

14   brettlarson69 and brettlarson6969; is that correct?

15   A.  Yes.

16   Q.  And that you used decoy photographs of a known juvenile

17   boy -- may not be known to you, but it's an actual juvenile

18   boy who lives in the United States -- in your Brett Larson

19   social media accounts; is that correct?

20   A.  Yes.

21   Q.  And that you represented that Brett Larson lived in

22   Duluth, Minnesota and attended Morgan Park School in Duluth,

23   Minnesota; is that correct?

24   A.  Yes.

25   Q.  Moving to paragraph (b), Mr. Bjerknes, you used the

1     Brett Larson social media accounts to contact minor females

2     and males in middle school and high school; is that correct?

3     A.  Yes.

4     Q.  And the majority of the minor females and males that you

5     contacted resided in the state and district of Minnesota,

6     including in Bemidji, Minnesota; is that correct?

7     A.  Yes.

8     Q.  And you also contacted minors outside of the state and

9     district of Minnesota; is that correct?

10    A.  Yes.

11    Q.  And in total you agree that, based on the evidence that

12    the government has provided, that you were in contact with

13    at least 55 minor females and males that are known and

14    actual minors and are not law enforcement agents acting in

15    an undercover capacity.  Do you agree?

16    A.  Yes.

17    Q.  And we've agreed from here on out to refer to these

18    minor victims, the minor females and males, as Minor

19    Number 1 through Minor Number 55.  Do you agree?

20    A.  Yes.

21    Q.  Moving to paragraph (c), as part of this scheme you used

22    the Brett Larson decoy social media accounts to engage in

23    written sexually explicit conversations with minor females.

24    Do you agree?

25    A.  Yes.

1    Q.  And your written chats graphically described sexual acts

2    that you wanted to perform with the minor females and

3    described how you were sexually aroused by the minor

4    females; is that correct?

5    A.  Yes.

6    Q.  Moving to paragraph (d), as part of this scheme you used

7    the Brett Larson decoy social media accounts to direct minor

8    females to send you naked photographs of specific body

9    parts -- of the minor females' specific body parts.  Do you

10   agree?

11   A.  Yes.

12   Q.  And these photographs included pictures of the minor

13   females' genitalia and photographs or videos of the minor

14   females engaging in specific sexual acts or poses.  Do you

15   agree?

16   A.  Yes.

17   Q.  You then directed the minor females to send the

18   photographs or videos of themselves to you via Facebook or

19   Snapchat and they did that; is that correct?

20   A.  Yes.

21   Q.  And in total you obtained multiple photographs and

22   videos constituting child pornography from six different

23   minor females; is that correct?

24   A.  Yes.

25   Q.  And we've agreed that these minor females will be

1    referenced as Minors Number 1, 2, 3, 4, 5, and 6; is that

2    correct?

3    A.  Yes.

4    Q.  And you admit and agree that these images and videos

5    constitute child pornography as defined in 18, United States

6    Code, Section 2256, paragraph (8); is that correct?

7    A.  Yes.

8    Q.  Mr. Bjerknes, starting now with paragraph (e), with

9    respect to Minors Number 1, 2, and 3, you used one of your

10   iPhones to create videos of yourself using a second iPhone

11   to view the sexually explicit photographs and videos that

12   were sent to you; is that correct?

13   A.  Yes.

14   Q.  And these were sent to you by the minor females via the

15   Snapchat application; is that correct?

16   A.  Yes.

17   Q.  And you used your second iPhone to create a permanent

18   record of and to preserve the sexually explicit photographs

19   and videos that you received from Minors Number 1, 2, and 3;

20   is that correct?

21   A.  Yes.

22   Q.  And you agree and admit that the iPhones that you were

23   using to do this were manufactured outside of the state of

24   Minnesota and therefore would have traveled in interstate

25   and foreign commerce, correct?

1    A.  Yes.

2    Q.  Paragraph (f).  As part of your scheme you also sent

3    sexually explicit photographs and videos to minor females

4    and males, correct?

5    A.  Yes.

6    Q.  And you specifically sent photographs of your own

7    genitalia and photographs and videos containing adult

8    pornography.  Do you agree?

9    A.  Yes.

10   Q.  And on more than one occasion you distributed the

11   sexually explicit photographs that you directed Minor

12   Number 4 to take of herself and you sent that to Minor

13   Number 7, a minor male, via Facebook.  Do you agree?

14   A.  Yes.

15   Q.  Moving to paragraph (g), at all times relevant to this

16   scheme and to Counts Number 1 and 2 in the Information you

17   were employed as the assistant principal of Bemidji Middle

18   School in Bemidji, Minnesota; is that correct?

19   A.  Yes.

20   Q.  And due to your role as assistant principal, you

21   personally knew many of the minor victims that you contacted

22   via the Brett Larson social media accounts; is that correct?

23   A.  Yes.

24   Q.  And, for example, with respect to Minor Number 1, you

25   participated in meetings with regard to Minor Number 1 while

1    you were an assistant principal at Bemidji Middle School; is

2    that correct?

3    A.  Yes.

4    Q.  Let's talk specifically, Mr. Bjerknes, about Count

5    Number 1, which is in paragraph (h) of our plea agreement.

6            You began communicating over the Internet, which

7    you have agreed is a facility of interstate and foreign

8    commerce, with Minor Number 1 in September of 2016.  Do you

9    agree?

10   A.  Yes.

11   Q.  And you contacted Minor Number 1 on Facebook via your

12   Brett Larson profile, correct?

13   A.  Yes.

14   Q.  And you agree that Minor Number 1 was born in March of

15   2003 and that you knew that she was 13 years old at the time

16   you began communicating with her, correct?

17   A.  Yes.

18   Q.  And Minor Number 1 told you how old she was during your

19   social media conversations, correct?

20   A.  Yes.

21   Q.  And you also knew about her age, that she was under the

22   age of 18, because of the information you learned about her

23   in your role as assistant principal; is that correct?

24   A.  Yes.

25   Q.  In written Facebook conversations, you as the Brett

1    Larson profile and Minor Number 1 played a game of truth or

2    dare; is that correct?

3    A.  Yes.

4    Q.  And you dared Minor Number 1 to send photographs which

5    were sexual in nature, correct?

6    A.  Yes.

7    Q.  And you asked for pictures of her various body parts,

8    correct?

9    A.  Yes.

10   Q.  And at your prompting Minor Number 1 actually sent you

11   photographs to the Brett Larson social media account; is

12   that correct?

13   A.  Yes.

14   Q.  And those were sent via the Facebook Instant Messenger

15   application?

16   A.  Yes.

17   Q.  You also dared, using the Brett Larson social media

18   profile, Minor 1 to watch a, quote, unquote, porno clip; is

19   that correct?

20   A.  Yes.

21   Q.  And you sent that to her via the Snapchat application,

22   correct?

23   A.  Yes.

24   Q.  On or about September 5th of 2016 you agree that using

25   the Internet you knowingly persuaded, induced, and enticed

1    Minor Number 1 to engage in sexual activity for which a

2    person can be charged with a criminal offense, namely, the

3    production of child pornography; is that correct?

4    A.  Yes.

5    Q.  And that is you agree that using the Internet you caused

6    Minor Number 1 to engage in sexually explicit conduct for

7    the purpose of producing a visual depiction of such conduct

8    or for the purpose of transmitting a live visual depiction

9    of such conduct; is that correct?

10   A.  Yes.

11   Q.  And Minor Number 1 sent you the video of herself

12   engaging in sexually explicit conduct via the Snapchat

13   social media application; is that correct?

14   A.  Yes.

15   Q.  And you further acknowledge that you used one of your

16   iPhones to record yourself using your second iPhone to view

17   and play the video that Minor Number 1 sent to you via

18   Snapchat; is that correct?

19   A.  Yes.

20   Q.  And the video that bears out the sexually explicit

21   conduct is identified by this file name -- it's an

22   alphanumeric number -- on page 4 of the plea agreement.  Do

23   you agree with that?

24   A.  Yes.

25   Q.  Moving to Count 2, Mr. Bjerknes, and paragraph (i), you

1    admit and agree that on or about March 12, 2017, in the

2    state and district of Minnesota, you used, persuaded, and

3    enticed a known minor, who we have referred to as Minor

4    Number 2, to engage in sexually explicit conduct for the

5    purpose of producing a visual depiction of that conduct; is

6    that correct?

7    A.  Yes.

8    Q.  And you knew when you were doing that that it would be

9    transmitted to you using a means and facility of and in and

10   affecting interstate and foreign commerce; is that correct?

11   A.  Yes.

12   Q.  Including by cellular telephone and via the Internet; is

13   that correct?

14   A.  Yes.

15   Q.  And specifically you admit and agree that you used,

16   employed, persuaded, induced, and enticed Minor Number 2 to

17   produce the following visual depiction of herself engaging

18   in sexually explicit conduct; is that correct?

19   A.  Yes.

20   Q.  And that image -- or the video is labeled IMG_6330.MOV,

21   correct?

22   A.  Yes.

23   Q.  And you admit and agree that this visual depiction

24   constitutes child pornography as defined in 18, United

25   States Code, Section 2256, paragraph (8), correct?

1    A.  Yes.

2    Q.  And likewise you admit and agree that you used,

3    persuaded, and enticed Minor Number 2 to transmit the visual

4    depictions of child pornography to you using a cellular

5    telephone over the Internet; is that correct?

6    A.  Yes.

7    Q.  And you further acknowledge that you used one of your

8    iPhones to record yourself using your second iPhone to view

9    the image that Minor Number 2 sent to you via Snapchat; is

10   that correct?

11   A.  Yes.

12   Q.  And, finally, you agree that the cellular telephones

13   that you used to communicate with the minor victims, namely,

14   your iPhones, as well as to create the child pornography

15   were manufactured outside the state and district of

16   Minnesota; is that correct?

17   A.  Yes.

18   Q.  And, finally, the last paragraph in the factual basis is

19   on page 5.  It's with respect to additional offenses in

20   paragraph (k).  And you stipulate that pursuant to United

21   States Sentencing Guidelines Section 1B1.2(c) that your

22   conduct with respect to Minors Number 3, 4, 5, and 6 shall

23   be treated as if you were convicted of four additional

24   counts of production of child pornography, in violation of

25   18, United States Code, Sections 2251(a) and (e); is that

1    correct?

2    A.  Yes.

3    Q.  We've already talked about --

4            MS. MUNOZ-KAPHING:  That is the end of the factual

5    basis, Your Honor.

6    BY MS. MUNOZ-KAPHING:

7    Q.  We've discussed already with Judge Wright the statutory

8    penalties and the waiver of indictment, so I am going to

9    skip over those discussions that we have had in that part of

10   the plea agreement.

11           You've also agreed by entering into this plea

12   agreement to waive any pretrial motions.  So you have the

13   right to file pretrial motions, and Judge Wright addressed

14   this in the waiver of your rights, and you are agreeing by

15   entering into this plea agreement to waive your rights to

16   file any pretrial motions.

17           I am going to skip over paragraph 6, this is the

18   supervised release that Judge Wright has already addressed,

19   and move to paragraph 7, which is the guideline

20   calculations.

21           Your attorney and I have discussed the guideline

22   calculations and he's reviewed these with you, so I am going

23   to just discuss sort of the high-level points of them

24   because I know you have talked with him about this already.

25           But underneath the sentencing guidelines we need

1    to calculate what the adjusted offense level is for Counts 1

2    and 2 and so we have agreed and stipulated to that

3    calculation.

4          So we have agreed with respect to Count Number 1

5    that the base offense level for coercion and enticement is

6    the number 32.  Do you agree with that?

7    A.  Yes.

8    Q.  And that a specific offense characteristic is that we

9    add two levels because the offense involved a minor who had

10   not yet attained the age of 12 years -- who had attained,

11   excuse me, the age of 12 years, but had not attained the age

12   of 16 years.

13         We've also agreed that two levels are added

14   because the offense involved the commission of a sexual act

15   or sexual touching.

16         We've agreed that an additional two levels are

17   added because the offense involved the knowing

18   misrepresentation of a participant's identity to persuade,

19   induce, entice, and coerce a minor to engage in sexually

20   explicit conduct.

21         We also agree that for Count 1 that two levels are

22   added because you abused a position of trust with respect to

23   Minor Number 1.

24         So the total adjusted offense level for Count 1 is

25   40.

1          We've also agreed with respect to Count Number 2

2     that the base offense level for production of child

3     pornography is 32.  We've also agreed to a number of

4     enhancements in the specific offense characteristics.

5          Two levels are added because the offense involved

6     a minor who had attained the age of 12 years, but had not

7     attained the age of 16 years.

8          We agree that two levels are added because the

9     offense involved the commission of a sexual act or sexual

10    touching.

11         We agree that two levels are added because the

12    offense involved the knowing misrepresentation of a

13    participant's identity to persuade, induce, entice, and

14    coerce a minor to engage in sexually explicitly conduct.

15         And so the total adjusted offense level for Count

16    Number 2 is 38.

17         Do you agree with what I have just outlined?

18    A.  Yes.

19    Q.  Then we need to calculate a combined offense level and

20    we have agreed that because of your actions with regard to

21    Minor Number 1, Minor 2, and then Minors 3 through 6,

22    they're treated as distinct groups under the sentencing

23    guidelines.  And this is something you've talked to your

24    attorney about; is that correct?

25    A.  Yes.

1    Q.  And so the total adjusted offense level for each of the

2    four additional offenses is 36.  The greater of the adjusted

3    offense levels is 40 with respect to Count 1 and then

4    there's an additional five-level enhancement because of the

5    extra counts that you have pled guilty to or stipulated to.

6           So, therefore, after all the calculations with the

7    combined offense level, we agree that your offense level is

8    45; is that correct?

9    A.  Yes.

10   Q.  There are also additional enhancements for being a

11   repeat and dangerous sex offender.  We have agreed that

12   because the instant offenses of conviction are a covered sex

13   crime and because you engaged in a pattern of activity

14   involving prohibited sexual conduct, that an additional five

15   levels are added, which result in an adjusted offense level

16   of 50; is that correct?

17   A.  Yes.

18   Q.  Now, paragraph (c) talks about the reduction that you

19   get in your offense level because you have come today and

20   agreed to plead guilty and you have done this in a timely

21   fashion.  So because of that, you have a three-level

22   reduction, which would drop us down to 47.  However, because

23   the sentencing guidelines only treat offense level 43 as the

24   highest, you actually drop down to 43.  Do you understand

25   that?

1    A.  Yes.

2    Q.  The parties have agreed, based on a review of your

3    criminal history, that you are in Category Number I.  So

4    this is just our belief based on the information that we

5    have available at the time.  Judge Wright will calculate

6    what your criminal history offense is and if she calculates

7    it as something different and finds it as something

8    different, that's not a reason to back out from the plea

9    agreement.  So that's what -- this is what we've agreed that

10   it is.

11          So the advisory guideline range for an adjusted

12   offense level of 43 and a Criminal History Category of I

13   results in an advisory guideline range of life in prison.

14   Do you understand that?

15   A.  Yes.

16   Q.  And you understand that the fine range for this offense

17   level is from $25,000 to $250,000.  Do you understand that?

18   A.  Yes.

19   Q.  And similar to what Judge Wright has discussed with you

20   about the supervised release, there's a minimum for five

21   years and a maximum of life of supervised release.

22   A.  Yes.

23   Q.  Excuse -- yes, I did state that correctly.

24          Finally, with respect to sentencing

25   recommendations and departures, your attorney, Mr. Wold, and

1   I have agreed that we will reserve all rights to make any

2   motions for departures, whether downward or upward, in what

3   your sentencing is and that will be something that's in the

4   sole discretion of Judge Wright.

5           You do understand, though, that by pleading guilty

6   today, that there is a mandatory minimum sentence in this

7   case of 15 years in prison.  Do you agree?

8   A.  Yes.

9   Q.  Another important part of this plea agreement is with

10  respect to the state court sentence.  Now, the United States

11  has agreed that any sentence that you receive in state court

12  for the related state court charges for the charges of

13  electronic communication relating to or describing sexual

14  conduct with a child or solicitation of a child that are

15  filed out of Beltrami County, Minnesota, that any time that

16  you receive federally and any time that you receive from the

17  state, that the United States will agree that those can run

18  concurrently, meaning at the same time.  That's something

19  that we've agreed to.  Again, the judge is -- it's in her

20  discretion in terms of what happens at sentencing, but the

21  United States will agree to not oppose any request that you

22  make for concurrent time.

23          We've also discussed briefly the discretion of the

24  Court.  These stipulations are binding on you, on Mr. Wold,

25  and on myself.  They're not binding on Judge Wright.  She's

1    not a party to this plea agreement and so if she determines

2    that the guideline range is different, then that's not a

3    reason to back out of the plea agreement.

4              Finally, with respect to forfeiture, we've agreed

5    that forfeiture applies and you have agreed to forfeit a

6    white Apple iPhone identified at the bottom of page 10, a

7    black Apple iPhone identified at the top of page 11, and one

8    27-inch Apple iMac.  Do you agree with that?

9    A.  Yes.

10   Q.  You also agree that with respect to restitution, that

11   mandatory restitution applies, as Judge Wright has

12   explained, but that the parties have made no agreement with

13   respect to restitution for the victims of your crimes; is

14   that correct?

15   A.  Yes.

16             THE COURT:  May I stop you?  One of the electronic

17   devices is identified as a 27-inch Apple iMac in the plea

18   agreement.  Is that an Apple iPad, you said?

19             MS. MUNOZ-KAPHING:  Thank you, Your Honor.  It's

20   not an iPad.  It is an iMac, a computer, rather than a

21   tablet.  Thank you.

22             THE COURT:  Thank you.

23   BY MS. MUNOZ-KAPHING:

24   Q.  We'll skip over paragraph 12 with the special

25   assessment.  Judge Wright has already talked about that

1  earlier today.

2            And, finally, Mr. Bjerknes, on paragraph 13, this

3  agreement that we've just discussed today along with any

4  other agreements signed by the parties before the entry of

5  the plea, that's the entire agreement.  There's no other

6  agreements, promises, or representations or understandings.

7  Do you agree?

8  A.  Yes.

9            MS. MUNOZ-KAPHING:  Your Honor, that's all I have,

10  but I can go over anything else if you would like.

11                            **EXAMINATION**

12  BY THE COURT:

13  Q.  I want to emphasize and ensure that you understand,

14  Mr. Bjerknes, that pursuant to paragraph 2(k) of the plea

15  agreement that's on page 5 of the plea agreement, you have

16  stipulated that under federal sentencing guidelines your

17  conduct with respect to Minor 3, Minor 4, Minor 5, and

18  Minor 6 should be treated as if you were convicted of four

19  additional counts of production of child pornography and if

20  at the time of sentencing the Court agrees with this

21  application of the federal sentencing guidelines, this

22  conclusion could result in a recommended guideline

23  sentencing range of life in prison.  Do you understand that?

24  A.  Yes.  Yes, Your Honor.

25  Q.  And you have had enough time to consult with Mr. Wold

1  about that particular fact, but also the rest of the plea

2  agreement and the jeopardy or possible punishments and

3  deprivation of rights that will result from you entering a

4  guilty plea; is that correct?

5  A.  Yes, Your Honor.

6          THE COURT:  Mr. Wold, are there any other

7  provisions that need to be reviewed or anything else that

8  you would like to add or clarify regarding the factual

9  basis?

10          MR. WOLD:  No, Your Honor.

11  BY THE COURT:

12  Q.  And, Mr. Bjerknes, are those the terms of the plea

13  agreement as you understand them, those that

14  Ms. Munoz-Kaphing has addressed as well as the plea

15  agreement that's before you and then the clarifications that

16  we've made subsequent to you indicating that you understood

17  the terms of the plea agreement?

18  A.  Yes, Your Honor.

19  Q.  And other than what is contained in the plea agreement

20  and what I've just told you, has the government or anyone

21  else made any promises in order to get you to plead guilty

22  today?

23  A.  No, Your Honor.

24  Q.  I want to be sure that you understand the impact of the

25  plea agreement on me.

1          First I want you to understand that although the

2     government and Mr. Wold can make a recommendation about your

3     sentence, I do not have to accept their recommendation and I

4     don't have to sentence you according to the plea agreement.

5     Do you understand that?

6     A.  Yes, Your Honor.

7     Q.  And as I sit here today, I do not know what sentence I

8     will impose and I won't even begin to determine what

9     sentence is the appropriate sentence until a presentence

10    investigation is completed and until I receive a presentence

11    report about you.  Do you understand?

12    A.  Yes, Your Honor.

13    Q.  And because I don't have any idea what sentence I will

14    impose, neither the lawyers nor anyone else can know what

15    sentence I will impose.  Do you understand?

16    A.  Yes, Your Honor.

17    Q.  It's possible that I'll give you a sentence that's

18    longer than you're expecting or hoping for and if I give you

19    a sentence like that, you will not be able to take back or

20    withdraw your guilty plea.  Do you understand that?

21    A.  Yes, Your Honor.

22    Q.  You may be able to appeal the sentence, but no matter

23    what sentence I give you, your guilty plea will stand.  Do

24    you understand?

25    A.  Yes, Your Honor.

1    Q.  And your plea agreement discusses the federal sentencing

2    guidelines and I want to explain how I will use those

3    guidelines.

4         I'll first look at the federal sentencing

5    guidelines and decide what the sentencing guidelines

6    recommend in your case.  What your plea agreement, as I said

7    before, what it says is not binding on me.  I will make my

8    own decision as to that.

9         I will then look further at the guidelines because

10   sometimes the guidelines themselves recommend a sentence

11   above or below the range, what we call a departure.

12        And finally I will decide whether to follow the

13   recommendations of the sentencing guidelines.  It's just a

14   recommendation for me.  It's not binding on me and, in fact,

15   I'm required to consider many things in addition to the

16   recommendations of the guidelines when I decide your

17   sentence.  Do you understand that?

18   A.  Yes, I do, Your Honor.

19   Q.  So you cannot count on getting a guideline sentence.

20   You may get a sentence that's higher than the guidelines

21   recommend.  You may get a sentence that's lower than the

22   guidelines recommend.  Do you understand that?

23   A.  I do, Your Honor.

24   Q.  Now, your plea agreement provides that you accept

25   personal responsibility for your criminal conduct, which may

1    entitle you to a reduction in your guidelines offense level

2    so long as you continue to accept responsibility by

3    cooperating in this process and by providing all requested

4    information as it relates to the charged criminal conduct.

5    So the government has indicated that it will move for a

6    three-level reduction so long as you continue to accept

7    responsibility and cooperate with this process.

8            Do you, Mr. Bjerknes, understand that it's

9    entirely up to the government to decide whether to make a

10   motion for a reduction based on your acceptance of

11   responsibility for your criminal conduct?

12   A.  Yes, Your Honor.

13   Q.  And do you understand that even if you believe that you

14   have satisfied the requirements for that reduction, the

15   government might disagree and choose not to move for the

16   reduction?

17   A.  Yes, Your Honor.

18   Q.  Okay.  You also understand that even if the government

19   does move for that reduction, I may deny the motion and

20   decide not to reduce your sentence.

21           And, again, do you understand that no matter what

22   happens, you will not be able to withdraw your guilty plea;

23   do you understand?

24   A.  Yes, I do, Your Honor.

25   Q.  After I impose the sentence, the government will have

1    the right to appeal the sentence if the government thinks

2    that I made a mistake or gave you a sentence that was too

3    short, not long enough.  Do you understand that?

4    A.  Yes, Your Honor.

5    Q.  And, likewise, you will have the right to appeal the

6    sentence if you think I made a mistake or gave you a

7    sentence that was too long, but I want to be clear that it's

8    only the sentence that you will be able to appeal.  You will

9    not be able to appeal on the assertion that you're innocent

10   or that certain evidence should be suppressed.  Do you

11   understand that?

12   A.  I do, Your Honor.

13   Q.  Mr. Bjerknes, are you making this plea voluntarily and

14   of your own free will?

15   A.  I am, Your Honor.

16   Q.  And has anyone forced you, threatened you, coerced you,

17   or done any harm to you or another person to get you to

18   plead guilty?

19   A.  No, they have not, Your Honor.

20   Q.  Are you going to plead guilty because you are, in fact,

21   guilty of the crimes charged?

22   A.  Yes, Your Honor.

23          THE COURT:  And, Mr. Wold, is there anything else

24   that you would like me to cover with Mr. Bjerknes before he

25   enters his guilty plea?

1          MR. WOLD:  No, Your Honor.

2          THE COURT:  Ms. Munoz-Kaphing, is there anything

3     that you would like me to cover with Mr. Bjerknes before he

4     enters his guilty plea?

5          MS. MUNOZ-KAPHING:  No, Your Honor.  Thank you.

6     BY THE COURT:

7     Q.  Mr. Bjerknes, do you have any questions for me or for

8     Mr. Wold before I ask for your plea?  If you do, you may

9     speak with Mr. Wold outside of my hearing if you have any

10    questions.  Do you have any questions at this time for me or

11    Mr. Wold?

12    A.  No, I do not, Your Honor.

13    Q.  You understand all of your constitutional rights that I

14    have gone over with you?

15    A.  Yes, Your Honor.

16    Q.  And do you knowingly and intelligently and voluntarily

17    give up those rights?

18    A.  Yes, Your Honor.

19    Q.  Mr. Bjerknes, how do you plead to Count 1 of the

20    Information, which alleges that you committed the crime of

21    coercion and enticement, in violation of Title 18, United

22    States Code, Sections 2422(b) and 2427, do you plead guilty

23    or not guilty?

24    A.  Guilty, Your Honor.

25    Q.  And, Mr. Bjerknes, how do you plead to Count 2 of the

1    Information, which alleges that you committed the crime of

2    production of child pornography, in violation of Title 18,

3    United States Code, Sections 2251(a) and 2251(e), do you

4    plead guilty or not guilty?

5    A.  Guilty, Your Honor.

6             THE COURT:  May I have the plea agreement and

7    please verify that it's been signed.

8        (Document handed to the Court)

9             THE COURT:  Mr. Bjerknes, this is your signature

10   on the plea agreement on page 12?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Based on the record established in

13   this case, I find that the defendant, Brandon Mark Bjerknes,

14   is mentally competent and capable of entering an informed

15   plea.

16            I find that Mr. Bjerknes understands the nature of

17   the charges against him and the nature of these proceedings

18   and the consequences of his guilty plea.

19            I find that Mr. Bjerknes's guilty plea is free,

20   it's voluntary, it's knowing, and it is informed.

21            And I find that his guilty plea is supported by

22   independent facts in the record establishing all of the

23   elements of the offenses listed in Counts 1 and 2 of the

24   Information.

25            Mr. Bjerknes, I accept your guilty plea and I

1     adjudge you guilty as a matter of law of Count 1 and

2     Count 2.

3              I want to tell you what will happen next.  The

4     probation officer will conduct an investigation and prepare

5     a report that will help you -- help me decide on your

6     sentence.  The probation officer will interview you as a

7     part of that investigation and you'll be required to give

8     information for that report.  Your attorney may be present

9     when you are interviewed.

10             After the report is prepared, you'll have a chance

11    to read it and discuss it with Mr. Wold.  If there's

12    anything in the report that you think is incorrect or if

13    something has been left out of the report that you want me

14    to know, you'll have a chance to file objections to the

15    report.

16             Before I decide on your sentence I will read not

17    only the report, but I will also review any objections that

18    either you or the United States have made, as well as any

19    other papers that you or the government have filed.

20             You'll then have a sentencing hearing.  At that

21    sentencing hearing I'll impose your sentence, but before I

22    do so I will give both you and Mr. Wold, your attorney, a

23    chance to speak.

24             Do you understand?

25             THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:  Now, I understand that Mr. Bjerknes

2     currently is released subject to pretrial supervision, but

3     mandatory detention pending sentencing applies in this case.

4     Is that correct?

5              MS. MUNOZ-KAPHING:  Yes, Your Honor.

6              THE COURT:  Do we need to review the mandatory

7     detention -- the nature of the mandatory detention and the

8     federal laws regarding that?

9              MR. WOLD:  Your Honor, I have been advised by the

10    pretrial officer, Mr. Alberts, that has been monitoring

11    Mr. Bjerknes.  He suggests that if there's potentially

12    circumstances that would allow continued release, I could

13    raise those.  I have discussed that with Mr. Bjerknes.

14             I don't know if the Court is aware, but he was

15    first arrested in Beltrami County on state court charges

16    there.  He was released on bail with conditions.  He abided

17    by all those conditions.

18             Even when it became apparent that there would be

19    these federal charges, he was living free at that time, but

20    continued to abide by those conditions.  After he came to

21    federal court he was released to the halfway house on strict

22    conditions, including house arrest.  He abided by those

23    conditions perfectly.

24             He was allowed to travel freely to my office that

25    he did on several occasions, facing the consequences that

1   he's known about for many weeks now.  In fact, he was at my

2   office yesterday traveling freely.  He's returned.  He has

3   not attempted to run.  He has not attempted to cause harm to

4   himself.

5          I've raised this issue with Mr. Bjerknes and told

6   him that I could make this argument to Your Honor.  He has

7   asked me not to and joins in the government's motion to

8   detain him.  He takes responsibility for his shameful

9   conduct.

10          And that's the state of the record.

11          THE COURT:  Thank you.  And I will add to the

12   record the legal basis for the mandatory detention.

13          The offenses to which Mr. Bjerknes pleaded guilty

14   both constitute crimes of violence under 18 U.S.C.

15   3156(a)(4)(C) and these chapters include the offenses of

16   coercion and enticement, Chapter 117, and production of

17   child pornography, Chapter 110.  Plus, the maximum statutory

18   sentence for the offense of coercion and enticement is life

19   imprisonment.

20          Under the United States Code, Section 3143(a)(2),

21   when a defendant is found guilty of either a crime of

22   violence or an offense for which the maximum sentence is

23   life imprisonment, detention pending sentencing is mandatory

24   unless I find that there's a substantial likelihood that a

25   motion for acquittal or a new trial will be granted or an

1   attorney for the government has recommended that no sentence

2   of imprisonment be imposed on the person and I find by clear

3   and convincing evidence that the person is not likely to

4   flee or pose a danger to anyone in the community.

5         Mr. Bjerknes's guilty plea negates the

6   applicability of the first statutory exception regarding a

7   motion for an acquittal or a new trial, and there's no

8   indication that the government will recommend a sentence of

9   no imprisonment.  For that reason Mr. Bjerknes's detention

10  is mandatory because neither exception is applicable.

11        And because mandatory detention applies here,

12  Mr. Bjerknes is remanded to the custody of the United States

13  Marshal at the conclusion of this hearing.

14        Mr. Bjerknes, you will be informed of the date of

15  your sentencing hearing and I need to warn you that you are

16  legally required to attend your hearing, your sentencing

17  hearing, and failure to appear at a sentencing hearing is

18  itself a crime for which you could be prosecuted.

19        Is there anything else that we need to take up at

20  this time?

21        MS. MUNOZ-KAPHING:  Nothing from the government,

22  Your Honor.  Thank you.

23        MR. WOLD:  Your Honor, if I could make one

24  request.  Mr. Bjerknes traveled here this morning on his

25  own.  He was able to greet his wife, who is present in the

1    courtroom, prior to this hearing.  His parents traveled a

2    great distance to be here.  They were caught in traffic and

3    were unable to be here at the start of the hearing.  If I

4    could merely ask if Mr. Bjerknes could greet his parents in

5    the well of the courtroom here before he's taken into

6    custody, that's my only request.

7           THE COURT:  I'm afraid that I'm not able to grant

8    that request for security reasons and so that request is

9    denied.

10          Is there anything further?

11          MS. MUNOZ-KAPHING:  Nothing from the government,

12   Your Honor.

13          THE COURT:  I mean, I'm happy to have him stand,

14   but we can't have any kind of contact with him and anyone

15   else in the courtroom as he's about to be taken into

16   custody.  Understood?

17          MR. WOLD:  Understood.

18          THE COURT:  Understood, Marshals?

19          DEPUTY MARSHAL:  Yes, ma'am.

20          THE COURT:  We are in recess.

21      (Court adjourned at 9:08 a.m.)

22                         *     *     *

23

24

25

1

2

3          I, Lori A. Simpson, certify that the foregoing is a

4     correct transcript from the record of proceedings in the

5     above-entitled matter.

6

7               Certified by:  _s/ Lori A. Simpson_

8                              Lori A. Simpson, RMR-CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25