RECEIVED
BY MAIL
FEB 11 2019
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

**U.S. District Court**

**U.S. District of Minnesota**

United States of America          )

                                  )          Hon. Wilhelmina M. Wright

v.                                )

                                  )          Dkt: 0:17-mj-00479-JTH

Brandon Mark Bjerknes             )

### Defendant's Brief in support of his §2255 motion

Comes now the defendant Brandon Bjerknes, who moves this court to respectfully vacate and dismiss his current convictions under Title 18 § 2422(b) and 2427; and Title 18§2251(a) and 2251(e), for violations of the 5th, 6th, and 14th Amendment to the U.S. Constitution. This court has jurisdiction under Title 18§2255.

In support his allegations he states the following.

### Factual Background

On March 20th 2017, the Beltrami Sheriff's department executed a search warrant on the home of the defendant at around 6:00PM. At that time the defendant gave a brief statement and was cooperative with authorities. On March 23rd 2017, the defendant did turn himself in to the Beltrami Sheriff's department for arrest and processing related to the state investigation and complaint. The following day the defendant had his initial appearance where he was formally charged with two counts of Engaging in Electronic Communication Relating to or Describing Sexual Conduct with a Child in violation of Minnesota Statute Section 609.352, Subdivision 2a(2). The defendant posted $50,000 and was released on bail.

SCANNED
FEB 11 2019
U.S. DISTRICT COURT ST. PAUL

In mid-April 2017, the defendant made his formal request, through his attorney, Peter

Wold, requesting speedy trial (**see Defendants Affidavit/Statement of Facts**).  Following this

request, the States Attorney amended the defendant's complaint to add two further violations of

the same statutes already mentioned in the original complaint, but relating to separate instances.

### *New Evidence*

*\* On January 16th 2019, the defendant learned through his family, that subsequent to his request
for speedy trial, Mr. Wold waived the defendant's state Speedy Trial rights as well.  According to
Mr. Wold this was done to "give time to properly negotiate the defendant's plea and to show
willingness to work with the state prosecutor on this matter." This waiver is not only totally
against the defendant's wishes, it was done for no other reason than to give the
State/Government an unfair tactile advantage.  The facts of this case show that not only was
there no resolution in the state proceeding, but that the time allowed by a speedy trial waiver
allowed the state to transfer venue for conduct that had originated from the original operative
facts known from the time of the defendants original arrest. \**

While on bail awaiting trial, the defendant was arrested in his home on May 30th 2017, on

a Federal complaint alleging violations of Title 18§2251(a), 2252(a)(2), and 2422(b).  Despite

the defendants previous compliance with bail, and the Federal charges arising from the exact

same nexus of facts and evidence that had resulted in the defendants State Complaint, the

defendant was detained pending a bond hearing. Then, following a June 5th 2017 detention

hearing, he was ordered into Halfway-house confinement.  Following the primary detention

hearing, Peter Wold spoke with the AUSA about quickly resolving this case, as the defendant

had made his speedy trial request known to the same defense counsel in the state prosecution.

The defendant had already relayed his intentions to continue with the same speedy trial request

that had originated in the State of Minnesota.

Sometime between June 6th and June 20th 2017, Peter Wold came to Sherburne County

Jail to inform the defendant that the Government was working in the case. The defendant asked

Peter Wold why he had not yet been indicted.  Mr. Wold informed the defendant that they still

had time to indict but that they had not yet done so. When pressed as to how long the

Government has to indict, Mr. Wold was not specific at all and avoided the issue. On or about

June 20th the defendant was release to Halfway house confinement. Two to three times weekly, if

not more, the defendant, and members of his family, called Mr. Wold to inquire about the status

of both State and Federal Prosecution. Following weeks of uncertainty, the defendant asked

counsel why he had yet to be indicted, and asked what would happen once he was indicted. The

defendant then began to contact both Mr. Wold and Adam Morrison daily via text message using

a Halfway house authorized cell phone. The defendant was informed by Mr. Wold's associate

Adam Morrison, in early August, that following an indictment, they would begin the pretrial

phase and prepare for trial. Between the detention hearing and the offer for the plea deal, the

defendant made multiple requests via telephone attempting to review his discovery personally.

Mr. Wold first responded that "he was working on it but the AUSA was reluctant to disclose any

per Fed. R. Crim. Pro. 16 claiming that it contained victim information." The defendant made a

second request that would have included an exemption for that would have been covered under

Title 18§3509, [to include §3509(m)]. The discovery that the defendant was allowed to review, a

single time, were the contents of the police reports from the state level prosecution. The next

communication, directly following the contact with Adam Morrison, was in late August when

Mr. Word informed the defendant that the Government had offered a plea deal to two criminal

counts that were not on the original complaint. Furthermore the Government offered little time to

reply to the plea deal. The defendant informed counsel that he needed time to decide if he wanted

to agree to the plea offered, as the deal offered mentioned 55 victims and still carried the

possibility of life in prison.  As this was the first time the defendant had been accused of

victimizing that large a number of minors he was, at this stage unaware of the outcome of a deal

acknowledging those facts. With a small explanation from counsel and the note of the possibility

of life in prison, the defendant agreed to take the plea deal. As noted in his affidavit (**See**

**Statement of Facts),** the defendant did not know that, at this point, his counsel had not in any

way attempted to exert his speed trial rights, nor did he know that Peter Wold had in fact agreed

twice to waive the his speedy trial rights to allow the government more time to prepare its case.

As the newly acquired evidence shows the defendant was also not aware of Mr. Wold's waiver

of the state speedy trial rights either.

Following limited communications with defense counsel, the defendant agreed to take a

plea deal, admitting guilt on a multiple count charging "information" as opposed to an

indictment.  The "information" contained conduct that was included in the original complaint but

noted as relevant conduct. During a change of plea hearing the defendant signed not only the

earlier mentioned plea (**Dkt. #26)(see exhibit# 1)**  to the two count information, but a "waiver of

indictment."(**Dkt. #25)(see exhibit# 2)**  When the defendant asked why an indictment waiver

was  required, he was told that it was "formality," and it was in his best interest as the

Government had chosen not to pursue more serious charges.

At the defendant's February 6th Sentencing hearing, he was sentenced to 300 months, for

violations of Title 18 § 2422(b) and 2427; and Title 18§2251(a) and 2251(e). Following this the

defendant was returned to the County Court for Beltrami on February 8, 2017 and sentenced to

consecutive 15, 20, 25 and 30 month sentences (**see State Sentencing Transcript Pg. 36 Ln.**

**13- Pg. 37 Ln. 9)(see exhibit# 3)** for multiple counts of Engaging in Electronic Communication

Relating to or Describing Sexual Conduct with a Child in violation of Minnesota Statute Section

609.352, Subdivision 2a(2).

Following both the state and federal sentencing hearing, defense counsel, Mr. Wold never advised the defendant of the possible ability to appeal the sentences that had been imposed by either court.

## Charging Power vs. Separation of Powers

*"Under the basic concept of separation of powers, the judicial power to interpret and apply the law can no more be shared with another branch then the Chief Executive, for example, can share with the Judiciary the veto power, or Congress share with the Judiciary the power to override a Presidential veto"*

[*Stern v. Marshall*, 564 U.S. 462, 483, 131 S. Ct. 2594, 180 L. Ed. 2d 475(2011)]

The defendant presents the following questions to the court:

1. Does an attorney for the State violate the separation of powers clause to the US Constitution when they attempt to find a specific venue, with which to charge the defendant, for the sole purpose of the attached statutory sentencing range?

2. Should an attorney in one venue be held as a principal participant in the conduct mentioned in question #1, when they knowingly accept prosecution that is tainted by another venue's unconstitutional acts or knowingly transfer to another venue to avoid repercussions for unconstitutional acts in their own venue?

3. Are Attorneys for the States and for the Government exempt from prosecution of violations of federal laws while operating "under color of law"?

The prosecutor on the state level has admitted, in open court that the federal prosecution of the defendant was done for the sole purpose of assigning statutory sentencing range as Mr. Frank (*the state prosecutor*) stated the following at the defendant state sentencing hearing on February 8th 2018:

*"We knew fairly early on that the state statutes addressing this behavior could not compare to the sentences that the Prosecution could get at the Federal level. And we*

> *knew fairly early on that we wanted to enlist the assistance of the United States Attorney's office and prosecute the bulk of these cases federally, in light of the exposure of the sentences, including exposure to life imprisonment with the defendant. And that case was prosecuted in Federal Court."* **(State Sentencing Transcript Hearing 2-8-18; Pg. 4 Ln .9-18)(see exhibit# 4)**

The Attorney for the state is operating under the executive branch of Government, the same branch that law enforcement operates under. "Where police man takes it upon himself to adjudicate guilt and administer punishment, even of a non-corporal nature, he had deprived persons affected of due process of law and offenses (officer's actions) become one of constitutional dimension under Title 18 §242.

The Supreme Court has repeatedly emphasized that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort'" *United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)(quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)). Based off the transcripts quoted, the decision to move the defendant prosecution to the federal level was done for no other reason other than the sentencing range available in federal venue. The actions in the case by Minnesota State's Attorney David P. Frank, and The United States Attorney Angela Munoz-Kaphing are an Aggrandizement of the Executive branch of the Government while being an encroachment on the Judicial. The Judicial branch is charged with adjudicating guilt and determining sentence. In this instance the Attorneys for both the state and the Federal Government ignored the basic foundation of our entire criminal justice system, *Innocent until proven guilty beyond a reasonable doubt*. They instead choose to make themselves judge, jury and executioner.

"A prosecutor should remain free before trial to exercise the broad discretion entrusted to him/(her) to determine the extent of the social interest in prosecuting" and " a change in the

charging decision made after the initial trial is completed is much more likely to be improperly motivated then is a pretrial decision." *US v. Goodwin* 73 LED 2D 74, 457 U.S. 368. The state courts and federal courts have turned into a court system that no longer embraces a trier of fact. For an incredibly high number of cases are no longer resolved by trail, but by a plea deal. Thus "In todays' criminal justice system... the negotiation of a plea bargain rather than the unfolding of a trial is almost always the critical point for a defendant; *Johnson v. U.S.* 860 F. sup. 2d 663 (3-22-12). This was intended to mean that the defendant's rights in the pretrial phase of prosecution have now become more important than the trial phase itself for the vast majority of defendants in the court system. Hence the courts should review any and all post arrest, pre-indictment and pretrial actions by the Government with the utmost scrutiny as the United States Constitution, as a living document, should extend protection under the 5th, 6th and 14th Amendment to the pre-indictment and pretrial phase of prosecution when the interest of justice is preserved by doing so.

The Separation of Powers clause to the US Constitution is specific in that the Executive branch of Government has the charging power. However, it has limited the sentencing power to the judicial branch. This is an incontrovertible fact, as not only are the sentencing powers limited to the judicial branch in the Federal Courts, but the Supreme Court ruled in *Booker*, applying mandatory application of the Sentencing Guidelines (created by Congress) violated the constitution as it placed a Legislative restriction on Judicial powers and allowed the Executive branch (ex. U.S. Probation Office) to determine the applicable guideline range to force judicial compliance under. Furthermore, in Federal courts certain sentences require a trier of fact. The Judicial power requires the unanimous approval of the Jury and the Judge to apply the death penalty to a defendant eligible for said capital punishment. A jury "is instructed to apply the law

regardless of the consequences, and that punishment should not enter into the jury's consideration" *Shannon V. US* 129 LED 2D 459, 512 US 573.  In the mentioned death penalty case, the jury is not instructed on the application of the death penalty until after the full trial has completed and the jury has reached a guilty verdict. Only subsequent to the finding of guilt can the jury be asked to determine sentence. At any other point in the proceeding, the knowledge of the potential sentence would unduly prejudice the trier of fact.

In the current case, both the attorneys' for the State and Federal governments' chose prosecution based on improper motives. The prosecution began in the state based off of evidence of alleges criminal activity. However, the State Attorney chose to adjudicate guilt prior to any lawful finding of guilt, and then chose to recruit the attorney for the Government as a "principal" under Title 18§2, to prosecute the defendant federally, utilizing a statute that carries with a mandatory minimum of 15 years imprisonment. This action was a violation of the separation of powers, as it is a jointly undertaken action to deprive the defendant of his constitutional rights and to aggrandize the Executive branch of Government while encroaching on the Judicial.

Furthermore, Title 18§2 allow criminal defendants to be considered a principal for another perpetrator's criminal actions when under taken in the same scheme or plan of action. Title 18§242 establishes a federal law punishing one for depriving someone else of civil rights "under color of law." The courts have long held that the law enforcement "team" all operates under color of law. This is from the investigating officers, to the arresting officers, to the interviewing officers, to the prosecutors trying the case, to all the law enforcement agencies actively helping to convict a criminal defendant. To the question posed at the start of this section; *"Should an attorney be held as a principal participant in the conduct mentioned in question #1, when they knowingly accept prosecution that is tainted by the states unconstitutional act?"* The

constitution requires that the courts answer yes. If the courts refuse to hold the "**prosecutorial body**" (*For future reference, the **"Prosecutorial Body"** will be noted relating to actions that require the entire law enforcement team to undertake, and as actions that are unable to attenuate from one another. Some of these actions will include the Judge as well, as the Courts cannot remove themselves from unconstitutional actions of the Executive if as a principal they knowingly aid or further said actions, and neither can the executive branch remove the judicial branch when they knowingly further or aid in said unconstitutional actions*) to the same standard that it holds the rest of the citizens of the nation, then the courts have taken the stance that there is not "due process and equal protection of the law" as law enforcement would be exempt from any repercussions based off of illegal actions that deprive citizens of constitutional rights. The 5th Amendment to the U.S. Constitution applies "equal protection" to all. Officers prone to negligence can learn from courts that exclude illegally obtained evidence. This was a court stance attempting to explain how the courts should deal with unlawful searched in violation of the 4th amendment. In relation to 4th Amendment violations the courts have held that; "the 4th Amendment does not tolerate officers' unreasonable search and seizures just because he did not know any better. Even officers prone to negligence can learn from courts that exclude illegally obtained evidence" (*Stone* 428 US at 442, 96 S.Ct. 3037, 49 L.Ed 2d 1067) "Indeed they are perhaps the most in need of the education, whether by judges opinion, the prosecutors' future guidance, or an updated manual on criminal procedure. If officers are in doubt about what the law requires, exclusion gives them an incentive to err on the side of constitutional behavior." *US v Johnson* 457 U.S. 537, 561, 102 S.Ct. 2579, 73 L.Ed 2d 202 (1982).

The defendant in his brief fully acknowledges the "separate sovereign" ruling and its associated impact on the courts attempting to decipher a claim like that the defendant has

presented here. However, the defendant contends that the current "separate sovereign" stance is at odds with the "Petite policy" that was enacted by the Justice Department to determine the validity of successive prosecution for the same crime in different "sovereigns." "..The Petite policy is an internal Justice Department policy forbidding prosecution of a person for alleged criminality which was 'an ingredient of a previous state prosecution against that person': exceptions are made only if the prosecution will serve 'compelling interests of federal law enforcement' *US v. Gary* 74 F.3d 304, 313. The first circuit ruled that "The Federal Courts should not be used by the United States Attorney's office as an "appellate court" or to correct jury verdicts and enhance state court sentences *US v. Stokes* 947 F. supp. 546,556 (1996). In the current case this is exactly what has transpired in the state court. The decision to utilize the separate sovereignty of the Federal Court was made under unconstitutional, nefarious motives that intentionally deprived the defendant of Constitutional protection, and aggrandized the executive branch of Government while encroaching on the Judicial.

The purpose of the "separate sovereign" ideal was not to prevent separate punishment for single criminal event that legally qualifies as multiple offenses. As the courts well know an armed bank robbery can and is easily charged under Title 18§2113, Title 18§922, and Title 18§924, if the facts of the crime support such. Thus the purpose of the Double Jeopardy Clause to the US constitution was not to prevent punishment. It was to prevent successive charging. In this instance the defendants conduct in his Federal Conviction is the same conduct that he was charged and convicted of in the State. The Defendant utilized his own personal funds to pay for his legal defense in the state of Minnesota. Following the state prosecution, the prosecution that began in Federal court saw an already financially depleted defendant who was now reliant on the

court to appoint counsel to properly represent him on the same criminal activity that he had already been "put in jeopardy" under in the state of Minnesota.

When a separate sovereign brings a prosecution under the guise of a separate sovereign but, in truth, it is a second prosecution by the first sovereign, double jeopardy will attach. *Bartkus v. Illinois*, 359 U.S. 121, 123 3 L. Ed. 2d 684, 79 S. Ct. 676 (1959). The *Bartkus* exception is narrow. "It is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the later retains little or no volition in its own proceedings." *United States v Guzman*, 85 F.3d at 827.

It is time for the courts to determine whether or not they have allowed the Executive branch, in the current case, to encroach on the Judicial branch to the point where Prosecutor is no longer charged with presenting facts to a trier of fact, but instead is allowed to adjudicate guilt and determine the statutory sentencing range a defendant is subject to based off that unlawful self-adjudication of guilt. Mr. Frank chose to prosecute the defendant federally so he could choose a sentencing range that carried a mandatory minimum sentence. In *Allyene* the courts ruled that factors that enhance a defendant's stator sentencing range are factors that must be presented to a trier of fact. However, in the current case, this "fact finding" was done unlawfully by the Minnesota State Attorney to "enhance the state sentence." The decision to charge the defendant in a subsequent venue was the executive branch aggrandizing itself while encroaching on the judicial, violating the Separation of Powers Clause to the US Constitution. The Federal Prosecutor operates as a Principal (Title 18§2) operating under color of law, as a member of the **Prosecutorial Body**, under a common goal of prosecuting criminal defendants; as such they should be liable (Title 18§242) for constitutional violations perpetrated by other members of the **Prosecutorial Body**. If the courts are to uphold due process and equal protection for all; than by

establishing constitutional violations facilitated by the prosecutorial body, this court should hold

the Prosecutorial Body liable for the Constitutional Violations the defendant has suffered and

vacate the Federal Conviction and dismiss Federal Prosecution.

### Prosecutorial Procedure which runs afoul of the US Constitution

In the current case the Federal Prosecutor has maliciously utilized current court precedent

to rob the defendant of Due Process rights. The 6th Amendment affords the accused the right to a

speedy trial. However, the courts have ruled that continuances may be granted to allow for more

time when the court determines that the" ends of justice served by taking such action outweigh

the best interest the public and the defendant in a speedy trial" *US v. Adams* 625 F. 3d 371 (7th

Circuit 2010). To say that trampling of the constitution has become common practice is to

seriously understate the nature of the current system at play.

As noted above, the court can make a determination that should be made by an

independent, impartial, unbiased magistrate or judge to allow an extension of the time frame with

which to conduct the defendant's speedy trial. The court, at least in the current case, wholly

abandoned its judicial role when determining that a waiver was appropriate. This is factually

supported by (***Dkt. #18 page 2, paragraph #4*(see exhibit# 5)**. This document is the Second Joint

motion of the Parties for extension of time for filing indictment. *(As noted in the defendant's*

*affidavit this "joint" request was never presented to the defendant at all. Furthermore, the pre-*

*indictment resolution that the parties use for their request was not relayed until after this and the*

*previous request for extension of time had been filed. )* In the section of the motion noted, the

parties include a verbatim recital of the ruling noted in *Adams* 625 F. 3d 371. The court rules on

this motion granting an order that also recites verbatim the ruling in *Adams*. 625 F. 3d 371. As to

the ruling in Adams, the intention was not to have the courts continually rule a verbatim recital of the wording contained within in order to grant extensions of time. It was to examine the facts on a case-by-case basis and determine whether or not the parties requesting the extension have met the "threshold showing" to grant said extension.  In order to make a proper determination, that shows that the judicial role has not been wholly abandoned, the court should at minimum hold a hearing to determine if the facts presented, in an E-filed motion, are in fact the truth of the matter asserted by the defendant himself; especially when dealing with a waiver of the defendant's constitutional rights. By refusing to do so, the court has become a rubber stamp for the Prosecution. Thus a harmless-error review is not appropriate as the "ends of justice finding" is "inaccurate" *US v. Gambino* 59 F.3d 353, and this court should review for plain or reversible error.

When the court more closely examines the totality of the circumstances surrounding the actions undertaken by the prosecution in the pre-indictment, it becomes apparent that the prosecutor made attempts to side step the defendant speedy trial rights. A defendant's speedy trial rights are triggered by the federal arrest *US v. Adams* 694 F.2d 200, 202 (9th Circuit 1982). Furthermore, the courts ruled in *US v. Hausman*, 894 F.2d 686, 688 (11th Circuit), that the speedy trial time frame for a criminal defendant is based off the "complaint" that began the formal procedure. In this instance the triggering action would have been the federal arrest in this case, or at the latest, the detention hearing in which the defendant was confined to a half-way house. Courts have previously ruled that the formal complaint for the purposes of speedy trial, must contain the criminality that the defendant stands convicted of in order for a speedy trial violation. Essentially, if the defendant was convicted of something other than what the initial complaint contained, then no speedy trial violation could have occurred as no "formal

complaint" existed to start the time. However, when the complaint contains the criminality the

defendant stands convicted of, whether as charged or uncharged conduct, the noted speedy trial

time frame still exists. Noting this, the courts can see the attempt by the prosecutor to include

conduct as the charging information that was not charged in the initial complaint. However, the

conduct the defendant stands convicted of was noted as relevant conduct in the original

complaint (**see Dkt. #1 vs. Dkt. #20)(see exhibits# 6-7**). These are intentional actions done

"under color of law" attempting to deprive the defendant of constitutional protection.

Furthermore, the United States Attorney's office attempted to circumvent the

Constitutional violation by having the defendant sign a "speedy trial" waiver, following the

violation that had already occurred.(**see Dkt. #25)(see exhibit# 2**). The defendant signed the

waiver waiving his speedy trial rights on 9-28-17; a day after the time clock had expired. Not

only is this waiver late, but it is involuntary, as it was the product of deception. The defendant

had made his intention clear to Mr. Word: request speedy trial. As the Speedy trial procedure in

the Federal Court System is entirely unknown to the defendant, he would have totally relied on

the actions of his counsel to properly make said request known to the court. Upon signing the

waiver, he did not know that his counsel had already waived the time clock; therefore, he did not

know that a violation had already occurred. Without knowing the facts surrounding the rights

waived a waiver is not valid. *US v. Williams* 557 F.3d 943,948 (8th Cir 2009). The defendant's

waiver is invalid as, *but for counsel's unprofessional actions*, the defendant would have made a

pretrial challenge to the constitutional speedy trial violation that had occurred.

The **Prosecutorial Body** made multiple attempts to knowingly and willfully deprive the

defendant of constitutional protection. This was all done as to give the Executive branch powers

not delegated to them by the US Constitution. The state prosecutor wished to be the sole power

to assign a sentence to the defendant. Their decision to exploit the "separate sovereign" ideal was done for no other reason. Then, acting as a principal under Title 18§2 the Attorney for the United States Government acted under color of law (Title 18§242) to willfully deprive the defendant of Constitutional protection, namely due process and right to speedy trial under the 5th Amendment to the US Constitution and act as a sham for state prosecution.

When the Executive branch proves, through its own actions, that it has willfully, intentionally, and maliciously violated the rights of the accused, nothing short of dismissal can hope to serve the interests of justice.

### Ineffective Assistance of Counsel, Strickland Standard.

Counsel is constitutionally ineffective only when (1) the representation was so deficient that it "fell below an objective standard of reasonableness" and (2) was prejudicial; meaning "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington 466 U.S. 668, 687-688 (1984)*; *Williams v. United States, 452 F.3d 1009, 1012 (8th Cir. 2006)* Mr. Wold was not only the counsel for the defendant's state prosecution; he was appointed defender for the defendants federal case as well. While operating as the defendants counsel in the state prosecution he was fully aware of the defendants request for speedy trial. He was also aware of the defendant's wishes for a trier of fact. As the Federal prosecution originated from the state level prosecution, using not only the same evidence from the state, but utilizing the same investigative team the state had utilized; including the States Attorney Mr. Frank; there is no reason to believe that the defendant would have chosen anything less than the exact same defense that had already been

under taken. However, as the comments on January 16th 2019 have shown, Mr. Wold had already been operating under his own motives, in direct opposition to the defendant's wishes. The failures of Mr. Wold were knowing and intentional. It was not due to a lack of foresight. Thus the court need not consider this a "hindsight" review to determine counsels reasonableness; *Hood v. United States*, 342 F. #d 861, 863 (8th Cir 2003), *quoting Fields v. United States*, 201 F. 3d 1025, 1027 (8th Cir. 2000)(considering counsel's conduct during representation and avoiding judgment based on hindsight)

The sixth Amendment right to counsel historically has evolved to meet the challenges presented by a changing legal paradigm. *See Ash*, 413 U.S. at 310, 93 S. Ct. 2568 (noting that the extension of the sixth amendment right to counsel resulted from "changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself") The criminal justice system has changed and is changing so that defendants now face critical stages of the prosecution prior to indictment. The Sixth Amendment's underlying purpose is to protect defendants in criminal stages of their prosecution. As noted in the defendant's affidavit, Mr. Wold informed the defendant that his discovery request was being denied as it contained victim identifying information. Not only is this problematic, it is a blatant misrepresentation of Federal Rules of Criminal Procedure and other laws. Title 18§3509 allows for the redaction and/or exclusion of any information contained in a criminal defendants discovery that would identify any minor victim. Therefore, the defendant's discovery is allowed to be "redacted" and then disclosed. Furthermore the Adam Walsh Act inserted subsection (m) into title 18§3509; this section limits the possession of any material that constitutes child pornography to the Government. However, it allows for "ample time" to review the discovery at a Government facility.  Therefore, at the defendant's request, he

still should have been able to review his full discovery prior to signing a plea. As all of these

noted violations happened to the defendant and happen to multiple other defendants in the pre-

indictment stage when charging informations are utilized the way they are in the 8th Circuit (see

*United States v. Joel Conrad Schmtiz* 18-CV-1628-SRN/16-CR-280-SRN) the Sixth Amendment

should guarantee the right to counsel during pre-indictment plea negotiations as to prevent

Charging Informations from being utilized as a tactical advantage or a "bypass" for

constitutional protection facilitated by Attorney's for the Government.

    As the facts, in documentation, have shown, Mr. Wold chose to conspire with the United

States Attorney to deprive the defendant of his right to not only speed trial but his right to a

Grand Jury (*jointly filed motions with the United States Attorney's office that had never been*

*presented to the defendant, waiving constitutional protection*) (**Dkt. #18**)(**see exhibit# 5**). With

the defendant wishing to subject his state level prosecution to a trier of fact, he had chosen early

on to subject his evidence to the high standard of at least reasonable doubt. An information

requires none of these things and a defense attorney licensed to practice law in both state and

federal courts knows, or through due diligence, should know that; the type of defense requested

by the defendant, constitutionally allowed, and his continued inquires as to his federal

indictment; waiving the defendants speedy trial right would be directly contrary to the

defendants wishes, and ineffective to the type of defense required. As the newly acquired

evidence has shown, Mr. Wold chose to waive the defendant speedy trial rights in the state

without the defendant knowledge. There is no reason why defense counsel would have chosen to

waive his client's rights behind his back other than if Mr. Wold had chosen to operate on his own

independent of Mr. Bjerknes wishes. Defense attorneys are required to make a determination as

to the nature of any actions that the defendants request he or she undertake before the court. This

means an attorney is required to determine if an action is frivolous in nature prior to undertaking said action. The right to speedy trial that the defendant had requested is one that is guaranteed by the United States Constitution, under the 5th Amendment. Thus this request is one that is "objectively reasonable." Defense counsels actions deprived the defendant of Constitutional protection, thus being "below an objective standard of reasonableness" *Strickland at 687.*

The outcome of a trial on the state level is impossible to determine at this point as the elements that are required to convict the defendant beyond a reasonable doubt, in state venue, are unknown. However, the defendant can show that the outcome of the proceedings would have been different as speedy trial requires the defendant be put on trial in a specific amount of time subsequent to his request. And as known from the state and joint federal prosecution, some of the evidence associated with the defendants criminal case, would not have been part of the record within the 30 days allowed prior to commencement of the defendants trial. With absence of evidence the court can conclude that the outcome of the case would have been different. Therefore "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland at 688.*

Furthermore, the defendant was never advised, by counsel, of any avenue of possible appeal subsequent to his sentencing hearing. It was not until the defendant arrived at his current place of confinement, that he was able to determine, through independent research, that he had been deprived of any direct appeal as well. Therefore, Mr. Wold's actions have deprived the defendant of his direct appeal as well as subjecting him to the current constitutional violations that have resulted in his conviction.

**Constitutional Remedy Required to Comply**

The Bill of Rights, "restrains the power of the government as a whole; it does not specify only a particular agency and exempt all others. The Judiciary is responsible, no less than the executive, for ensuring that constitutional rights are respected. *U.S. v. Leon* 468 US 897, at 933. The overreaching actions of the State Prosecutor are directly linked to the U.S. Attorney's Office, the State Court and the Federal Court as well. All are responsible for the actions that violated the defendant's Constitutional protection. Neither the U.S. Attorney nor the Federal court, can attempt to state that they are able to disconnect themselves from the actions of the state prosecutor. As noted in the lengthy dissent in Leon, Justice Stevens noted that a single incident, (as in an unlawful search, but easily extended to any unconstitutional behavior) cannot be both lawful and unlawful at the same time. *Leon* at 961.

The Attorney for the State of Minnesota conspired with the United States Attorneys' Office to utilize Federal prosecution as a ruse, a sham, and a sentencing enhancement for the state prosecution. With consecutive sentencing on the state level (compelled by statutory law), the state of Minnesota allows for multiple punishments for a single criminal act or "spree." The addition of federal charges run afoul of the double jeopardy clause of the constitution as it was solely to aggrandize the Executive Branch while encroaching on the Judicial.

The **Prosecutorial Body** operates as a whole, State Investigators, Federal Investigators, State Judges and Federal Judges as well. If the court fails to vacate dismiss the Federal conviction it becomes difficult to give any meaning at all to the limitations imposed by the 5th, 6th and 14th Amendments to the US constitution, if they are read to proscribe only certain conduct by one member of the **Prosecutorial Body** while allowing another member to utilize the fruits of said illegality. The Prosecutor for the State of Minnesota knew of the consecutive sentencing for a single criminal act and/or spree, therefore his decision to utilize the federal venue as a ruse or

sham for sentencing enhancement runs afoul of the 5th and 14th Amendment. Mr. Word's total failure to represent the defendant and his actions willfully deceiving the defendant about his defense and constitutional protection runs afoul of the 6th Amendment, under the *Strickland* standard. The abandonment of the Judicial role by the presiding judge runs afoul of the defendants 5th Amendment rights as well. Furthermore, all members of the **Prosecutorial Body** have been shown to be a part of this Unconstitutional Prosecution.

Dismissal is required when the Constitutional Violations the defendant have been subject to can be cured by no other means. If the court is to allow the current conviction to stand, it is setting the precedent that prosecutors, judges, and defense counsels actions can be both Lawful and Unlawful and Constitutional and Unconstitutional at the same time. This is what that the Supreme Court warned against in *Leon* in 1984. All of the members of the Prosecutorial Body must be held accountable for actions facilitated by each member in order to insure justice and proper compliance with the US Constitution; as all are Principals (Title 18§2) operating under color-of-law (Title 18§242), thus said members must be held in compliance in order to uphold "equal protection" under the 5th Amendment to the US Constitution for all the citizens of this county. Failure to do so, applies a separate lower standard of constitutional protection to people outside the Executive and Judicial branch, or to those not operating under "color-of-law."

**Conclusion**

The defendant respectfully request this court vacate the defendant current convictions under Title 18 § 2422(b) and 2427; and Title 18§2251(a) and 2251(e), and dismiss with prejudice.

Respectfully submitted *Pro Se*

Per 28 C.F.R.§ 543.11

Brandon Mark Bjerknes 21152-041

FCI Pekin

PO Box 5000

Pekin, IL. 61555-5000