UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-234 (WMW)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRANDON MARK BJERKNES,<br><br>　　　　　Defendant. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Angela M. Munoz-Kaphing, Assistant United States Attorney, hereby responds to Defendant Brandon Bjerknes' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Defendant Brandon Bjerknes was convicted of production of child pornography and coercion and enticement following a plea of guilty to a two-count information. Although Bjerknes was sentenced to two concurrent 300 month sentences, which is below the advisory U.S. Sentencing Guidelines recommendation of life imprisonment, Bjerknes now asks the Court to vacate his conviction under 28 U.S.C. § 2255. Bjerknes filed a timely petition under 28 U.S.C. § 2255, alleging various grounds for relief. (Dkt. Nos. 67-69). The Defendant's petition is without merit and should be denied.

**FACTUAL BACKGROUND**

### A.　　Factual Background and Summary of the Investigation

During his tenure as Assistant Principal of Bemidji Middle School, Bjerknes created an elaborate social media scheme to sexually exploit minors, including middle-school-aged

students. Bjerknes created alias social media profiles and posed as a 13-15 year old male from Duluth, Minnesota. He then diligently and deliberately used the social media profiles to engage in written, sexually explicit conversations with his minor victims. Bjerknes's chats graphically described the sexual acts that he wanted to perform with the minor females he contacted and described how he was sexually aroused by the minor females. Bjerknes engaged in an ongoing campaign to coerce and entice his minor victims to send him naked photographs of their genitalia and photographs of them engaged in specific sexual acts or poses.

Bjerknes victimized at least 55 girls and boys, many of whom he personally knew due to his role as Assistant Principal and his previous teaching positions in Bemidji, Minnesota. He obtained multiple photographs and videos constituting child pornography from six different minor females. Bjerknes also used his school-issued cellular phone to create a permanent record of the child pornography he obtained from his victims via Snapchat. Bjerknes' scheme lasted nearly three years before a vigilant parent discovered disturbing social media messages sent by Bjerknes to the parent's 13-year-old daughter.

After a diligent investigation by the Beltrami County Sheriff's Office and the Minnesota Bureau of Criminal Apprehension, law enforcement put an end to Bjerknes's predatory crimes. Law enforcement executed multiple search warrants prior to any charges being filed in federal or state court. The warrants authorized searches of: the residence Bjerknes shared with his wife and minor children, the electronic devices seized from Bjerknes, and Bjerknes' alias social media accounts. Following the execution of these warrants, Bjerknes was first charged in Beltrami County, Minnesota with multiple counts

of engaging in electronic communication relating to or describing sexual conduct with a child or solicitation of a child.

### B.     Procedural Background and Summary of the Guilty Plea

On May 30, 2017, Brandon Mark Bjerknes was charged by federal complaint with two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (Dkt. No. 1). Following a nearly two-hour long contested detention hearing, Bjerknes was preliminarily detained in federal custody until a space was available in a halfway house. He was released to a halfway house on June 22, 2017, where he remained on 24-hour lockdown.

On September 13, 2017, a two-count Information was filed charging Bjerknes with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a); and one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (Dkt. No. 20). On September 28, 2017, Bjerknes made a knowing and voluntary waiver of his right to be indicted by a Grand Jury, entered a guilty plea to both counts, and was taken into federal custody at the conclusion of the change of plea hearing.  (Dkt. Nos. 24, 26).

On October 4, 2017, Bjerknes appeared in Beltrami County District Court and entered guilty pleas to the state criminal charges relating to engaging in electronic communication relating to or describing sexual conduct with a child or solicitation of a child.  *See* Government Exhibit 1 (Transcript from October 4, 2017 Beltrami County Court Hearing.)

### C. Sentencing

Bjerknes appeared before this Court on February 6, 2018 for his sentencing hearing. (Dkt. No. 53). As contemplated by the parties' plea agreement and in the Pre-Sentence Investigation Report, the advisory U.S. Sentencing Guidelines for Bjerknes's conviction was life imprisonment. The Court sentenced Bjerknes to 300 months as to Count 1 and 300 months as to Count 2. (Dkt. No. 55). The Court further ordered that the sentences for Counts 1 and 2 would run concurrently with each other and with the sentences imposed in Beltrami County District Court cases. *Id.* Bjerknes appeared in Beltrami County District Court on February 8, 2018 for his sentencing hearing on the state court charges. *See* Government Exhibit 2 (Transcript from the February 8, 2018 Beltrami County Court Hearing). He was sentenced to 15 months, 20 months, 25 months, and 30 months for the charges pending in Beltrami County District Court. *Id.*

## ARGUMENT

The Defendant's petition is without merit and should be denied. The Defendant raises a number of arguments in his "Brief in support of his §2255 motion" (Dkt. No. 69), which appear to fall into two categories. First, he argues that his conviction should be vacated because the state and federal prosecutors assigned to his criminal cases in Beltrami County, Minnesota and the federal District of Minnesota colluded and abused their discretion when pursuing charges in both the state and federal courts. Second, his conviction should be vacated due to ineffective assistance of counsel. Because none of the Defendant's arguments provides a basis for relief and are well-documented in the record, there is no need for an evidentiary hearing on this matter.

A.     **Legal Standard**

A federal prisoner may petition under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence if it was imposed in violation of federal laws "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof to establish that his sentence must be vacated. *Cassidy v. United States*, 428 F.2d 585, 587 (1970).

Relief under 28 U.S.C. § 2255 is reserved for violations of constitutional rights and "for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Beyond constitutional and jurisdictional errors, however, the permissible scope of § 2255 claims is "severely limited." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc). To prevail on his § 2255 motion, the Defendant must show his challenges present exceptional circumstances and raise a "fundamental defect which results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). Similarly, a petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994).

### B.   Bjerknes's Prosecutorial Collusion and Abuse of Discretion Claim is Not Cognizable

Bjerknes argues that the Court should vacate his conviction based on his allegations that the U.S. Attorney's Office for the District of Minnesota and the Beltrami County Attorney's Office colluded and abused their discretion by pursuing both federal and state charges. Bjerknes alleges a violation of separation of powers, a violation of the Department of Justice's *Petite* policy, and a host of miscellaneous arguments relating to a phrase that Bjerknes repeatedly refers to as "prosecutorial body." Bjerknes's fanciful factual descriptions of the record and patchwork constitutional law analysis do not amount to a cognizable claim under 28 U.S.C. § 2255.

As an initial matter, whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion. *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *see also Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("[T]he Government retains 'broad discretion' as to whom to prosecute.'"). The Eighth Circuit has specifically recognized that cooperation between state and federal authorities does not amount to unlawful collusion. *See United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997) (citing *United States v. Talley*, 16 F.3d 972, 974 (8th Cir. 1994)). "The fact that the federal government prosecutes a federal crime in a federal court that could or has been prosecuted as a state crime in state court does not itself violate due process." *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001).

Importantly, the Eighth Circuit recognizes that cooperation between federal and county or state officials is not offensive to the constitution, but actually welcome. In *United*

*States v. Leathers*, 354 F.3d 955, 960 (8th Cir. 2004), the Eighth Circuit declined to credit a similar argument to that made by Bjerknes – that the referral of the matter to federal prosecutors was the direct cause of the federal prosecution and that the federal prosecutors were not acting independently. "A causal connection such as the one shown here does not make a subsequent federal prosecution a 'sham and cover' for a state prosecution. Referrals and cooperation between federal and state officials not only do not offend the Constitution but are common place and welcome." *Id.* (citing *Barkus v. Illinois*, 359 U.S. 121, 123 (1959)).

Due to the nature of Bjerknes' ongoing offense conduct, it triggered investigations into violations of both Minnesota State criminal law and Federal criminal law. Bjerknes' exploitation of 55 minor victims, many of whom were his own students, constituted violations of multiple state and federal criminal laws. The U.S. Attorney's Office and Beltrami County Attorney's Office independently charged Bjerknes with multiple offenses covering certain instances of his nearly three-year long campaign to exploit his students and other minor victims. It is a routine occurrence in the State and District of Minnesota for Defendants to face both state and federal charges when they sexually exploit minor children. Here, the prosecutions of Bjerknes were conducted independently by different prosecutors from different offices. Once Bjerknes expressed interest in a global resolution of the pending federal and state charges, his attorney, Peter Wold, and the state and federal prosecutors began negotiating the resolution of the pending state and federal charges. *See* Government Exhibit 3 (September 1, 2017 Email). The parties ultimately were able to negotiate a global resolution that included two plea agreements to resolve all of the pending

7

state and federal charges.  The plea agreements benefited Bjerknes in multiple ways.  For example, the federal plea agreement included a paragraph documenting the U.S. Attorney's Office's agreement that it will not oppose any request that Bjerknes's federal sentence run concurrently with any state sentence he is ordered to serve.  (Dkt. No. 26 at ¶ 8.)  The fact that Bjerknes faced a harsher sentence in federal court than in state court in Beltrami County does not equate to a violation of the due process clause.  *See United States v. Turpin*, 920 F.2d 1377, 1388 (8th Cir. 1990).

Bjerknes briefly mentions the Department of Justice's *Petite* policy.  This is an internal policy that prohibits federal prosecution of a defendant who has been convicted in state court for the same conduct unless the subsequent federal prosecution is specifically authorized by the Attorney General.  The Eighth Circuit has consistently held that the *Petite* policy confers no substantive rights on the accused.  *United States v. Staples*, 747 F.2d 489, 491 (8th Cir. 1984).  The enforcement of the policy lies with the Attorney General, and "an individual defendant cannot avoid prosecution on the basis of the policy." *Id.*  The *Petite* policy cannot form the basis of a claim that any subsequent federal prosecution was improper.  *United States v. Kummer*, 15 F.3d 1455, 1461 (8th Cir. 1994). Therefore, even if the government had acted contrary to the *Petite* policy, Bjerknes can obtain no relief based on it.  *See United States v. Larsen*, 427 F.3d 1092, 1094 (8th Cir. 2005).

Bjerknes' claims of prosecutorial misconduct and improper collusion between the state and federal prosecutors are unsupported by the factual record in this matter, and finds no support in the law.  As such, this argument is not a cognizable form of relief and his motion should be denied.

### C. Ineffective Assistance of Counsel Claim

Bjerknes also argues that the Court should vacate his conviction due to ineffective assistance from his attorney Peter Wold. Bjerknes offers various claims that Mr. Wold was ineffective, including: (1) Mr. Wold waived Bjerknes' speedy trial rights; and (2) Mr. Wold did not provide Bjerknes with access to discovery. Bjerknes claims that this resulted in prejudice to Bjerknes and that his conviction should be vacated.

The burden of demonstrating ineffective assistance of counsel is on a defendant. *United States v. Cronic*, 466 U.S. 648, 658 (1984); *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Both parts of the Strickland test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The attorney's conduct must fall below an objective standard of reasonableness to be found ineffective. *United States v. Ledezma-Rodriguez*, 423 F.3d 830,

9

836 (8th Cir. 2005).  If the underlying claim (*i.e.*, the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins*, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id*.

The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Anderson*, 393 F.3d at 753-54 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Bjerknes has not established that Mr. Wold's assistance fell below reasonable professional assistance, or that he was prejudiced by Mr. Wold's actions.  With respect to the first prong, Bjerknes' allegations regarding the speedy trial waiver and access to discovery do not come close to the standard required to show that counsel's assistance was so deficient that it amounted to a deprivation of Bjerknes's Sixth Amendment right to counsel.  Mr. Wold's affidavit (Dkt. No. 83) notes that Bjerknes retained Mr. Wold as private, hired counsel on March 27, 2017, after a two-count complaint was filed in Beltrami County charging Bjerknes with engaging in electronic communications relating to sexual conduct with a child. (Dkt. No. 83 at ¶¶ 2-3).  Following his retention, Mr. Wold provided Bjerknes with discovery that he had received in the state court proceeding and made a speedy trial demand at the April 17, 2017 hearing. (Dkt. No. 83 at ¶¶ 4-5).  After an

10

additional charge was filed in state court at the end of April 2017, Mr. Wold consulted with Bjerknes and withdrew the speedy trial demand. (Dkt. No. 83 at ¶¶ 7-10).

On May 30, 2017, Bjerknes was arrested pursuant to a federal complaint charging four different offenses relating to the sexual exploitation of minor victims. (Dkt. No. 83 at ¶ 12). Mr. Wold continued to represent Bjerknes in the federal criminal case. The parties appeared for a contested detention hearing before Magistrate Judge Bowbeer on June 5, 2017. (Case No. 17-mj-479-JTH at Dkt. No. 11). The Government presented testimony from Beltrami County Sheriff's Deputy Jarrett Walton and submitted seven exhibits in support of its detention motion. *Id.* The exhibits included redacted excerpts of Bjerknes's alias social media accounts and other evidence seized during a forensic evaluation of his electronic devices. Following a nearly two-hour hearing, which included cross-examination of the witness and oral argument by Mr. Wold, the Court released Bjerknes to a halfway house. *Id.*

While residing in the halfway house, Bjerknes was permitted to travel to Mr. Wold's office to review discovery and meet with Mr. Wold. (Case No. 17-mj-479-JTH at Dkt. No. 12). According to Mr. Wold's affidavit, Bjerknes did in fact review discovery at Mr. Wold's office and was in regular contact with Mr. Wold by telephone. (Dkt. No. 83 at ¶¶ 19, 22). Due to the nature of Bjerknes's offense and the fact that the discovery materials contained significant amounts of personal identifying information regarding the 55 minor victims, the Government moved for a protective order early on in the federal case. (Case No. 17-mj-479-JTH at Dkt. No. 16). Like many protective orders in the District of Minnesota for criminal cases involving minor victims, the protective order prohibited Mr.

Wold from leaving copies of the discovery materials with Bjerknes.  *Id.*  Due to the volume of videos and images containing child pornography that Bjerknes has collected and produced, portions of the discovery materials were only available for inspection at the Minnesota Bureau of Criminal Apprehension.  During the course of his representation of Bjerknes, Mr. Wold reviewed the discovery materials containing the child pornography at the Minnesota Bureau of Criminal Apprehension.  *See* Government Exhibit 3 (September 1, 2017 Email).

In order to give Mr. Wold and Bjerknes the opportunity to review the voluminous discovery materials, and for the parties to negotiate a pre-Indictment resolution of the federal charges, the parties jointly moved to extend the Government's indictment deadline on two occasions.  Mr. Wold notes in his affidavit that he discussed these extensions with Bjerknes and that Bjerknes agreed to both of the extensions.  (Dkt. No. 83 at ¶¶ 18, 20).

In his Section 2255 motion, Bjerknes now claims that he did not agree to any extensions or waivers of his speedy trial demands.  Incredibly, Bjerknes argues that Mr. Wold was "conspiring with the United States Attorney to deprive the defendant of his right to not only [sic] speed trial but his right to a Grand Jury."  (Dkt. No. 69 at p. 17).  Bjerknes has failed to establish that Mr. Wold's strategic legal decisions fell below an objective standard of reasonableness.  The Court's review of Mr. Wold's decision to consult with Bjerknes and ultimately file two joint motions to extend the federal indictment deadlines is highly deferential.  *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005).  Bjerknes has made no showing as to why the Court should not defer to Mr. Wold's decision

or a showing of why Mr. Wold's performance fell below the objective standard of reasonableness.

Relatedly, Bjerknes has offered no credible argument as to why and how he was prejudiced by Mr. Wold's legal assistance. To make out a cognizable ineffective assistance of counsel claim, Bjerknes must show that but for the errors he assigns to Mr. Wold, there is a reasonable probability that the result of the proceeding would have been different. *Anderson*, 393 F.3d at 753-54. Bjerknes offers no explanation to the Court as to how the outcome of the federal charges would have been different if Mr. Wold had not agreed to extend the indictment deadline.

The underlying record in this matter provides a fairly clear picture of what would have happened if Mr. Wold had not agreed to extend the indictment deadlines. The Government would have proceeded to presenting a multi-count indictment to the Grand Jury, and the Government's only plea offers to Bjerknes would have required guilty pleas to multiple counts, including production of child pornography, coercion and enticement, distribution of child pornography, possession of child pornography, and/or transfer of obscene material to a minor. (Dkt. No. 83-1 at Exhibit 4). With the benefit of advice from counsel, Bjerknes agreed to extend the federal indictment deadlines so that he could continue to pursue mental health counseling, obtain a psycho-sexual evaluation (which was presented by Bjerknes as mitigating evidence in the context of his request for a 15-year sentence), demonstrate his acceptance of responsibility, and negotiate a global resolution of the federal and state charges. (Dkt. No. 83 at ¶¶ 18, 20). Bjerknes offers no explanation of how the federal criminal case would have been different had Mr. Wold not agreed to

13

extend the indictment deadline. As such, Bjerknes's ineffective assistance of counsel argument is not a cognizable form of relief and his motion should be denied.

### D. Bjerknes is Not Entitled to an Evidentiary Hearing

When considering a § 2255 motion, a court may hold an evidentiary hearing. *See* 28 U.S.C. § 2255(b). A hearing is not required, however, when "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (citation and internal quotation marks omitted). Here, each of Bjerknes's allegations are contradicted by record or inherently incredible. The Court should decline to hold a hearing and deny Bjerknes's petition.

Dated: June 11, 2019                    Respectfully Submitted,

                                        ERICA H. MacDONALD
                                        United States Attorney

                                        *s/ Angela M. Munoz-Kaphing*

                                        BY: ANGELA M. MUNOZ-KAPHING
                                        Assistant United States Attorney
                                        Attorney ID No. 0389207