UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 17-cr-0234 (WMW) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTIONS** |
| Brandon Mark Bjerknes, | |
| Defendant. | |

This matter is before the Court on Defendant Brandon Mark Bjerknes's motion to vacate his convictions pursuant to 28 U.S.C. § 2255. (Dkt. 67.) Plaintiff United States of America opposes the motion. For the reasons addressed below, the motion is denied.

### BACKGROUND

Bjerknes pleaded guilty on September 28, 2017, to one count of coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. §§ 2422(b), 2427, and one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), (e). Bjerknes's convictions arise from his scheme, executed between 2014 and 2017, to use "various social media applications, including Facebook and Snapchat, to solicit images and videos constituting child pornography from minor females, engage in sexually explicit conversations with minor females, and distribute sexually explicit images and videos to minor females and males." Bjerknes's scheme involved at least 55 minors.

Before Bjerknes was criminally charged for the conduct underlying his convictions, Minnesota law-enforcement authorities investigated Bjerknes's conduct. Beltrami County

prosecutors charged Bjerknes in Beltrami County District Court on March 23, 2017, with multiple felony counts of engaging in electronic communication relating to or describing sexual conduct with a child.  Subsequently, on May 30, 2017, federal prosecutors charged Bjerknes by complaint with multiple federal felony counts based on the same criminal conduct.  The federal complaint was dismissed after Bjerknes waived his right to be indicted by a grand jury and pleaded guilty to two felony offenses on September 28, 2017.  Approximately one week later, Bjerknes pleaded guilty to the state criminal charges in Beltrami County.

On February 6, 2018, this Court imposed two concurrent 300-month sentences of imprisonment for Bjerknes's federal convictions in this case.  This Court also ordered that Bjerknes's federal sentences run concurrently with any sentence that might be imposed for Bjerknes's criminal convictions of state offenses in Beltrami County.  Two days later, the Beltrami County District Court sentenced Bjerknes to imprisonment for 15, 20, 25, and 30 months, respectively, for his four state criminal offenses.  Bjerknes did not appeal his federal or state convictions or sentences.

On February 11, 2019, Bjerknes filed the pending motion to vacate his convictions pursuant to 28 U.S.C. § 2255, arguing that state and federal prosecutors colluded and abused their discretion by charging him for the same conduct in both state court and federal court and that his attorney provided ineffective assistance of counsel.  Bjerknes also moves for discovery.  The United States opposes Bjerknes's motions.

## ANALYSIS

A federal prisoner may move to vacate a conviction or sentence "for jurisdictional and constitutional errors" or fundamental errors of law that inherently result in "a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotation marks omitted). A defendant seeking relief "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). It is the defendant's burden to establish that Section 2255 relief is warranted. *See Cassidy v. United States*, 428 F.2d 585, 587 (8th Cir. 1970). Bjerknes advances two grounds for vacating his convictions—collusion by state and federal prosecutors and ineffective assistance of counsel—which the Court addresses in turn.

### I.     Collusion by State and Federal Prosecutors

Bjerknes first argues that the state and federal prosecutors abused their discretion and violated the United States Constitution by charging him for the same conduct in both state and federal court. According to Bjerknes, his federal prosecution was a "sham" because it "was nothing short of a secondary prosecution to substantially increase the statutory [imprisonment] range [Bjerknes] was subject to in the state court."

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Under the dual sovereignty doctrine, "although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution."

*United States v. Leathers*, 354 F.3d 955, 959–60 (8th Cir. 2004) (quoting *United States v. Johnson*, 169 F.3d 1092, 1096 (8th Cir. 1999)).  For the purpose of the Double Jeopardy Clause and the dual sovereignty doctrine, the State of Minnesota and the United States are separate sovereigns.  *See id.* at 960.

While acknowledging the applicability of the dual sovereignty doctrine in his Section 2255 motion, Bjerknes nonetheless argues that the state and federal prosecutors "exploit[ed]" this doctrine to pursue a "sham" prosecution in federal court.  A "state prosecution that is merely a sham and a cover for a federal prosecution" may violate the Double Jeopardy Clause.  *Johnson*, 169 F.3d at 1096 (quoting *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959)).  But the United States Court of Appeals for the Eighth Circuit has "never explicitly held that the *Bartkus* [sham] exception applies" when the federal prosecution occurs *after* the state prosecution.  *Leathers*, 354 F.3d at 960 (citing *United States v. Basile*, 109 F.3d 1304, 1307 (8th Cir. 1997)).  Here, Bjerknes's federal prosecution occurred after his state prosecution and, therefore, the "sham" exception addressed in *Bartkus* is inapposite.

Even if the sham exception were applicable to a federal prosecution that occurred after a state prosecution, Bjerknes has not established that his federal prosecution was a "sham and cover" for his state prosecution.  According to Bjerknes, "the true motive behind the 'referral' to federal venue" in this case was to take advantage of the harsher federal penalties, thus demonstrating that the state prosecutor "was utilizing the Federal Venue as a Sham for the state."  But Bjerknes's argument is unavailing.  "[R]eferrals and cooperation between federal and state officials not only do not offend the Constitution," they "are

4

commonplace and welcome." *Id.* (citing *Bartkus*, 359 U.S. at 123). The independence of federal prosecutors is not undermined by a state prosecutor's referral, "regardless of the state prosecutor's motives in making the referral." *Leathers*, 354 F.3d at 960. Indeed, the Eighth Circuit has recognized that cooperation between federal and state law enforcement authorities because the relevant federal laws "carried the potential for harsher penalties . . . is not out of the ordinary." *Chavez v. Weber*, 497 F.3d 796, 804 (8th Cir. 2007) (citing *Leathers*, 354 F.3d at 960). Moreover, prosecuting a federal crime in federal court that previously "has been prosecuted as a state crime in a state court does not itself violate due process," even when the defendant is subject to a harsher sentence in federal court than in the prior state court proceeding. *United States v. Turpin*, 920 F.2d 1377, 1388 (8th Cir. 1990). As such, Bjerknes's contention that "improper motives" led to his prosecution in both state court and federal court is not a basis for vacating his convictions.[1]

Bjerknes also contends that the federal prosecutor violated the "*Petite* policy" of the Department of Justice. "The *Petite* policy, an internal policy of the Department of Justice, states that a federal prosecution should not be based on substantially the same acts as were the basis for a prior state prosecution unless there is a compelling federal interest." *United States v. Larsen*, 427 F.3d 1091, 1094 (8th Cir. 2005). But because the "*Petite* policy is a

---

[1] A sham prosecution may occur if, regardless of motive, "the state has effectively manipulated the actions of the federal government, so that the federal officials retained little or no independent volition." *Leathers*, 354 F.3d at 960 (internal quotation marks omitted). But even when accepting Bjerknes's allegations as true, nothing in Bjerknes's motion or the record in this case plausibly suggests that any such manipulation occurred here. Although Bjerknes contends that the same evidence and investigators were involved in both the state prosecution and the federal prosecution, such cooperation does not demonstrate improper influence or manipulation of the federal prosecutor.

discretionary policy of the Department of Justice," the policy "does not confer any substantive rights and its application cannot form the basis for a claim of improper prosecution." *Leathers*, 354 F.3d at 962. Accordingly, Bjerknes's reliance on the *Petite* policy fails to establish a meritorious claim for relief.

For these reasons, Bjerknes's motion to vacate his convictions based on alleged collusion between the state and federal prosecutors is denied.

## II. Ineffective Assistance of Counsel

Bjerknes also argues that his defense attorney, Peter B. Wold, provided ineffective assistance. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. When evaluating the reasonableness of defense counsel's conduct, courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Counsel's "strategic choices" executed after a thorough investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 690.

Bjerknes alleges that, by waiving Bjerknes's speedy trial rights and failing to provide Bjerknes with access to discovery, his counsel provided ineffective assistance. The Court addresses each allegation in turn.

### A.     Speedy Trial Rights

Bjerknes first contends that his former counsel, Wold, waived Bjerknes's right to a speedy trial without Bjerknes's knowledge and against Bjerknes's wishes.[2] Each submitted an affidavit that pertains to the relevant events.

According to Bjerknes, his counsel was "conspiring with the United States Attorney to deprive the defendant of his right to not only speed [sic] trial but his right to a Grand Jury." In his affidavit, Bjerknes attests:

> At the time I signed my plea, I did not know that Mr. Wold had waived my speedy trial rights in the State of Minnesota, and in the District Court. . . .
>
> At no time following my [sic] April 2017 did I ever give Mr. Wold . . . the impression or instruction that I wished to waive my speedy trial rights or grant an extension for such rights. My continual requests as to the status of my indictment firmly established my wishes for such rights.

Bjerknes's former counsel recounts a different version of events. According to counsel, when he appeared with Bjerknes in state court for a pretrial conference on May 17, 2017, the state prosecutor served Bjerknes with new evidence and an amended complaint adding a criminal count. "Based on the Amended Complaint and the new evidence" provided by the state prosecutor, Wold attests, Bjerknes's "Speedy Trial Demand was withdrawn with agreement of Mr. Bjerknes" and this waiver was placed on the record in state court.

Approximately two weeks after the United States filed the federal criminal complaint against Bjerknes in this Court, Bjerknes filed a motion for a 60-day extension of

---

[2]     The same counsel represented Bjerknes in connection with both his state prosecution and his federal prosecution.

7

time for the United States to file an indictment. In this June 12, 2017 motion, which includes Bjerknes's signature, Bjerknes represents to the Court that he "consents to the request and agrees that any period of delay is excluded from the calculation of time under the Speedy Trial Act." The magistrate judge granted that motion. On August 9, 2017, Bjerknes filed a motion for an additional 30-day extension, until September 27, 2017, which the magistrate judge also granted. This second motion does not include Bjerknes's signature but represents that Wold "consulted with Defendant about this extension request, and Defendant consents to the request and agrees that any period of delay is excluded from the calculation of time under the Speedy Trial Act." Consistent with this representation, Wold's affidavit provides:

> On August 7, 2017, based on representation by the government that they were about to produce discovery and propose a plea agreement, we agreed to extend the indictment for another thirty days. I discussed that in a phone call with Mr. Bjerknes on August 7, 2017. He agreed to an extension for another thirty days understanding that we would hope to reach a plea agreement within that time.

The parties did reach a plea agreement within that time period and Bjerknes appeared for a change-of-plea hearing on September 28, 2017. At that hearing the Court, following its standard practice, advised Bjerknes of his rights, including the right to a speedy trial and the right to be indicted by a grand jury. Bjerknes waived those rights and pleaded guilty to a felony information, resulting in the convictions that he now seeks to vacate.

When a district court receives conflicting statements from a Section 2255 petitioner and the petitioner's former counsel, the district court must conduct an evidentiary hearing only if "neither statement is facially incredible and both contain similar specificity" about

the disputed issue. *Witthar v. United States*, 793 F.3d 920, 923–24 (8th Cir. 2015) (internal quotation marks omitted). Bjerknes does not dispute that he signed the June 12, 2017 motion seeking an extension of time and waiver of his speedy trial rights. Nor does he specifically dispute any other material aspect of Wold's affidavit. At the September 28, 2017 change-of-plea hearing, the Court advised Bjerknes of his constitutional rights, which he expressly waived after confirming that he understood them. On this record, an evidentiary hearing is unnecessary because Bjerknes's allegations are both facially incredible and lacking in specificity.

Bjerknes also has not established that Wold's representation fell below an objective standard of reasonableness with respect to the waiver of Bjerknes's speedy trial rights. The record amply demonstrates that Bjerknes repeatedly and voluntarily waived his speedy trial rights. Moreover, by entering a guilty plea—the validity of which Bjernkes does not challenge—Bjerknes waived both his right to a speedy trial *and* his right to challenge any alleged prior violations of his speedy trial rights in this case. *See Cox v. Lockhart*, 970 F.2d 448, 453 (8th Cir. 1992). And even if Wold's actions were objectively unreasonable, Bjerknes offers, and the record supports, no plausible grounds for concluding that the result of the proceeding would have been different had Bjerknes's speedy trial rights not been waived.

For these reasons, Bjerknes has not demonstrated that he received ineffective assistance of counsel on this basis.

**B.      Access to Discovery**

Bjerknes also argues that Wold failed to provide him with sufficient access to discovery. According to Bjerknes, despite requesting access to the discovery materials in this case at least twice after the June 5, 2017 detention hearing, Bjerknes was permitted to review the discovery only "a single time," and the discovery provided to him was incomplete because victim information had been removed.

Wold attests, in his affidavit, that he first provided Bjerknes with discovery from the state prosecutor on April 10, 2017. Subsequently, on August 8, 2017, the federal prosecutor provided Wold with discovery subject to an August 2, 2017 protective order entered by the magistrate judge in this case. Although the protective order precluded Bjerknes from personally retaining copies of victims' identifying information included in the discovery, Wold provided Bjerknes the opportunity to review the discovery at Wold's office. And Bjerknes did so. The United States acknowledges that, because of the volume of videos and images of child pornography that comprised the discovery in this case, portions of the discovery materials were available for inspection only at the Minnesota Bureau of Criminal Apprehension (BCA). But the United States presents evidence that Wold reviewed these discovery materials at the BCA.

At the September 28, 2017 change-of-plea hearing, the Court followed its standard practice by advising Bjerknes of his rights and confirming, among other things, that Bjerknes had discussed with Wold everything about the case that he wished to discuss. Bjerknes expressly waived certain rights—including the right to file pretrial motions

challenging the government's evidence against him—and he pleaded guilty to a felony information, resulting in the convictions he now seeks to vacate.

Nothing in Bjerknes's briefing or affidavit materially contradicts the representations of Wold or the United States with respect to Bjerknes's access to the discovery in this case. And the record corroborates Wold's account. Bjerknes undisputedly had the opportunity to personally review the discovery in this case, and he expressly waived his right to challenge the United States's evidence when he entered his guilty plea. It is true that Bjerknes's access to some aspects of the discovery was limited by the protective order in this case, the purpose of which was to protect from public disclosure the personal information of minor victims. But Bjerknes does not challenge the validity of the protective order, which the record reflects was entered with Bjerknes's knowledge and consent[3] and which is consistent with applicable law. *See* 18 U.S.C. § 3509(d) (governing privacy protections for minor victims). Moreover, even if Wold's handling of the discovery in this case were objectively unreasonable, Bjerknes offers no plausible grounds for concluding that the result of the proceeding would have been different had Bjerknes been given broader access to the pornographic or any other discovery materials. Indeed, Bjerknes does not suggest that he was denied access to *exculpatory* discovery materials, or that the limitations on his ability to personally review all the discovery materials influenced his decision to plead guilty in any way.

---

[3]  The United States's motion seeking the protective order represents that "[t]he parties have conferred regarding a protective order" and Bjerknes "indicated through counsel that he is agreeable to the terms of the proposed protective order." Bjerknes has not disputed this representation.

11

For all these reasons, Bjerknes has not demonstrated that he received ineffective assistance of counsel on this basis.

### III.   Evidentiary Hearing

A district court may hold an evidentiary hearing on a Section 2255 motion to resolve disputed material facts.  *See* 28 U.S.C. § 2255(b).  But an evidentiary hearing is not required if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003).  Here, for the reasons addressed above, Bjerknes's allegations are contradicted by the record, inherently incredible, and would not entitle him to relief even if accepted as true.  Thus, an evidentiary hearing is not warranted.

### IV.   Certificate of Appealability

When a final order is issued in a Section 2255 proceeding, a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons addressed above, the Court concludes that Bjerknes has not made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability shall issue.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.   Defendant Brandon Mark Bjerknes's motion to vacate his convictions pursuant to 28 U.S.C. § 2255, (Dkt. 67), is **DENIED**.

      2.      Defendant Brandon Mark Bjerknes's request for a subpoena, (Dkt. 72), is **DENIED**.

      3.      Defendant Brandon Mark Bjerknes's motion for discovery, (Dkt. 82), is **DENIED**.

      4.      No certificate of appealability shall issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 27, 2020

    s/Wilhelmina M. Wright
    Wilhelmina M. Wright
    United States District Judge